Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| USUGA MANAGEMENT, LLC, | § | CASE NO. 23-31165-sgj11 |
| | § | Chapter 11 |
| Debtor. | § | |

## FIRST AMENDED DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION

## TABLE OF CONTENTS

ARTICLE I – INTRODUCTION ............................................................................................3

ARTICLE II - REPRESENTATIONS..................................................................................9

ARTICLE III - FINANCIAL STATUS OF THE DEBTOR...........................................10

ARTICLE IV - ANALYSIS AND VALUATION OF PROPERTY.............................14

ARTICLE V- SUMMARY OF THE PLAN ...................................................................15

ARTICLE VI – PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS..........15

ARTICLE VII - MEANS FOR IMPLEMENTATION OF PLAN.............................18

ARTICLE VIII – TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES...............................................................................................................18

ARTICLE IX – FEASIBILITY OF PLAN.......................................................................19

ARTICLE X – ALTERNATIVES TO DEBTOR'S PLAN ...........................................19

ARTICLE XI - RISKS TO CREDITORS UNDER THE PLAN ..................................19

ARTICLE XII - TAX CONSEQUENCES TO THE DEBTOR....................................20

ARTICLE XIII - PENDING LITIGATION .................................................................23

ARTICLE XIV - SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING
THE CASE...........................................................................................................23

EXHIBITS:

Plan of Reorganization ...........................................................Exhibit A

Financial Projections .............................................................Exhibit B

Tax Returns...........................................................................Exhibit C

# ARTICLE I
# INTRODUCTION

## Identity of the Debtor

**1.01**    Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. ("Code") on June 5, 2023 in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, initiating the above-styled and referenced bankruptcy proceeding. The Debtor is operating its business as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Code.

**Capitalized words in this Disclosure Statement shall have the meanings assigned to them in the Debtor's Plan of Reorganization.**

## Purpose of This Disclosure; Source of Information

**1.02**    The Debtor submits this Disclosure Statement pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of, and the Members of, Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan.  A copy of the Plan is attached hereto as **Exhibit "A"** and incorporated herein by this reference.  The Plan sets forth in detail the repayment arrangement between the Reorganized Debtor and its creditors. This Disclosure Statement describes the operations of the Reorganized Debtor contemplated under the Plan.

The source of information for this Disclosure Statement is the Debtor's management and records and all filings in this case.

## Explanation of Chapter 11

**1.03**    Chapter 11 is the principal reorganization chapter of the Code.  Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders.  Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor.  After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor.  Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization.  This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

## Explanation of the Process of Confirmation

**1.04**    Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court.  Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants.  It generally requires that the value to be distributed to Claimants and Equity Interest Holders may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

**1.05**     Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan.  Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.  The plan, however, must be accepted by (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

**1.06**     The Court may confirm the plan even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

**1.07**     Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether they have accepted the plan.

**Voting Procedures**

**1.08**     **Unimpaired Classes**.  Class 6 Allowed Equity Interests are not Impaired under the Plan and are deemed to have accepted the Plan.

**1.09**     **Impaired Classes**.  The Class 1, 2, 3 and 4 Claimants are Impaired as defined by Section 1124 of the Code.  Class 5 Insider Claims are also Impaired and may vote on the Plan, but their votes will not count for or against Confirmation.  The Debtor is seeking the acceptance of the Plan by Classes 1, 2, 3, 4 and 5. Each holder of an Allowed Claim in Classes 1, 2, 3, 4 and 5 may vote on the Plan by completing, dating and signing the Ballot sent to each holder and filing the ballot as set forth below.  One Ballot will be sent to each Claimant eligible to vote on the Plan. For all Classes, the ballot must be returned to the Debtor's attorney, Joyce Lindauer, Joyce W. Lindauer Attorney, PLLC, 1412 Main St., Suite 500, Dallas, Texas 75202, facsimile at (972) 503-4034 and email at joyce@joycelindauer.com.. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

**1.10**     **Acceptances**.  Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

**Best Interests of Creditors Test**

**1.11**     Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.  If Section 1111(b)(2) of the Code applies to the claims of such class, each holder of a claim

of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.  In order for the Plan to be confirmed, the Court must determine that the Plan is in the best interests of the Debtor's creditors.  Accordingly, the proposed plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation.  <u>Since the Plan proposes to pay all Allowed Claims in full,</u> the Debtor believes that creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Debtor believes that the Plan satisfies the requirements of Section 1129(a)(7).

### Definition of Impairment

**1.12**    As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

> leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or

> notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:

> cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; reinstates the maturity of such claim or interest as it existed before such default; compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

### Classification and Treatment of Claims and Interests

**1.13**    The Plan classifies Claims separately in accordance with the Bankruptcy Code and provides different treatment for different classes of Claims.

**1.14**    Only holders of Allowed Claims are entitled to receive distributions under the Plan. Allowed Claims are Claims that are not in dispute or have been litigated to a Final Order, are not contingent, are liquidated in amount, and are not subject to objection or estimation.  Initial distributions or other transfers of Cash or other consideration specified in the Plan otherwise available to the holders of Allowed Claims will be made on the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim, as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court.

**1.15**    In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in exchange for each Claim.

**Requirements for Confirmation of the Plan**

**1.16**    At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

The plan complies with the applicable provisions of the Bankruptcy Code.

The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.

The plan has been proposed in good faith and not by any means forbidden by law.

Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and (B) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

With respect to each impaired class of claims or interests:

(i) each holder of a claim or interest of such class has (A) accepted the plan or (B) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or (ii) if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

With respect to each class of claims or interests:

(i)      such class has accepted the plan; or

(ii)     such class is not impaired under the plan.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

(i)      with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(ii)     with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(iii)    with respect to a claim of a kind specified in section 507(a)(7) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan.

The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

The Debtor believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that The Debtor has complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.

The Debtor believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that the future operating revenues will be sufficient to satisfy the obligations under the Plan in addition to supporting sustainable growth of the enterprise.  These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

**<u>Cramdown</u>**

**1.17**    The bankruptcy court may confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it.  For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

**1.18**    "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims.  As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

With respect to a class of secured claims, the plan provides:

(a)(i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii)  that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)  for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c)  the realization by such holders of the "indubitable equivalent" of such claims.

With respect to a class of unsecured claims, the plan provides(a) that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b)  the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115 subject to the requirements that a) the value, as of effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (b) the value of property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

With respect to a class of interests, the plan provides:

(a)  that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b)  that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

**1.19**     In the event that one or more classes of Impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting Impaired class of Claims. The absolute priority rule requires that prior to the Debtor retaining or receiving any non-exempt property the senior classes of claims must be paid in full or vote to accept the Plan.

The Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each Impaired class of Claims.

## ARTICLE II
## <u>REPRESENTATIONS</u>

**2.01**     This Disclosure Statement is provided pursuant to Section 1125 of the Code to all the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of reorganization, as amended or modified.  The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.

**2.02**     The information contained in this Disclosure Statement has been derived from information submitted by the Debtor, unless specifically stated to be from other sources.

**2.03**   No representations concerning the Debtor are authorized by the Debtor other than those set forth in this Disclosure Statement.  The Debtor recommends that any representation or inducement made to secure your acceptance or rejection of the Plan which is not contained in this Disclosure Statement should not be relied upon by you in reaching your decision on how to vote on the Plan.  Any representation or inducement made to you not contained herein should be reported to the attorneys for the Debtor who shall deliver such information to the Court for such action as may be appropriate.

**2.04**   ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES.   IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE OR UPON THE MERITS OF THE PLAN.  ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

**2.05**   THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE APPROVAL BY THE COURT OF THIS DISCLOSURE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

**2.06**   THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED.  CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

**2.07**   THE DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.   THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

### ARTICLE III
### FINANCIAL STATUS OF THE DEBTOR

### Financial History and Background of the Debtor

**3.01**   The Plan is a Plan of Reorganization.  The Debtor will continue its business after

Confirmation of this Plan. The Debtor is the owner of the real property located at 8100 Lakeview Parkway, Rowlett, Texas 75088 (the "Property"). Under the Plan the Debtor will make installment payments with interest to all Creditors pending the sale of the Property, and once the property is sold the Debtor will pay all Claims in full.  The owner of the Equity Interests in the Debtor (the "Owner") will provide the funds to make the Plan payments called for by this Plan.

**3.02   Assets.** The Debtor's scheduled aggregate assets in the amount of $1,620,000.00 as of the Petition Date, consisting of the Property.

**3.03   Liabilities.** The Debtor scheduled aggregate liabilities in the amount of $422,000.00 as of the Petition Date.  The Debtor scheduled a Secured Claim of $410,000.00 held by 8100 Lakeview, LLC in its original Schedules of Assets and Liabilities, which was superseded by a proof of claim filed by 8100 Lakeview, LLC in the amount of $439,328.75. The Debtor also scheduled an Unsecured Claim of $12,000.00 held by KC Capital Group, LLC in an amendment to the Schedules.  Secured Tax Claims were filed by Garland ISD and Dallas County in the amounts of $9,319.60 and $8,145.72, respectively.

For a complete listing and explanation of the Debtor's assets and liabilities as of the Petition Date, parties should refer to the Schedules of Assets and Liabilities and any amendments thereto filed in this bankruptcy case.

In an Objection to the original version of this Disclosure Statement[1], 8100 Lakeview, LLC ("Lakeview") made the below allegations regarding the Debtor's loan history with Lakeview and the claim of KC Capital Group, LLC. The Debtor does not necessarily agree with these allegations but lists them below in the interest of full disclosure, along with the Debtor's responses:

a.   Debtor fails to disclose its loan history with 8100 Lakeview in that the loan commenced on November 30, 2022 and Debtor only made one (1) payment.

[Debtor's response: It is correct that the loan commenced on November 30, 2022 and Debtor only made one (1) payment. The Debtor's inability to meet all its financial obligations is the reason for filing this Chapter 11 case.]

b.   Debtor fails to disclose that it defaulted with its previous lender, Frost Bank.

[Debtor's response: It is correct that the Debtor defaulted with its previous lender, Frost Bank. The Debtor's inability to meet all its financial obligations is the reason for filing this Chapter 11 case.]

c.   Debtor fails to disclose that its principals – Luis Usuga and Maria Usuga -- have been sued in the 68th Judicial District Court of Dallas County, Texas, Cause No. DC-23-04204 ("State Court Suit") under guarantees of the Promissory Note entered into with 8100 Lakeview.

---

[1] See Lakeview's *Objection to the Adequacy of the Disclosure Statement* at Docket No. 33.

[Debtor's response: It is correct that Luis Usuga and Maria Usuga have been sued on the guaranties in the State Court Suit.]

d.  Debtor fails to disclose the potential effect of an adverse judgement against the principals in the State Court Suit, and what negative effect that would have on Debtor's projections in this bankruptcy matter.

[Debtor's response: The Debtor does not believe an adverse judgment against its principals would have a significant effect on its financial projections. Under the Plan the Debtor proposes to sell the Property as quickly as possible, which will generate more than enough sale proceeds to fund the Plan. The principals of the Debtor intend to continue to litigate the State Court Suit. Although it is possible that a judgment will be entered against Luis Usuga and Maria Usuga in the State Court Suit, this will not affect the sale of the Property and the satisfaction of all Claims in this case, including Lakeview's Claim. In the interim, the Usugas have committed to funding installment payments to creditors from the income they derive from the medical practice owned by Maria Usuga.

e.  Debtor fails to disclose the suspicious nature of the unsecured claim of KC Capital, including the Debtor's previous testimony on three different occasions that there were no unsecured creditors.

[Debtor's response: The Debtor denies that the claim of KC Capital is suspicious. The Debtor scheduled the claim of KC Capital upon recently learning of its existence. KC Capital fully explained the origins of its claim in its response to Lakeview's objection to the claim.[2] According to KC Capital's response, the claim is for consulting fees and expenses incurred in 2019 as KC Capital assisted the Debtor in forming a "joint development syndication" for the purpose of refinancing or selling certain Property. KC Capital paid the retainer for a securities lawyer, paid for the Debtor's formation documents, and otherwise provided consulting services and guidance first to the Usugas and then, upon the formation of the Debtor, to the Debtor.]

f.  Debtor fails to disclose why the scheduled amount of the KC Capital unsecured claim does not match the amount of the suspicious invoice.

[Debtor's response: The difference in the amount scheduled ($12,000.00) and the amount of the invoice ($11,671.25) is inconsequential.]

---

[2] See Lakeview's *Objection to the Scheduled Claim of KC Capital Group LLC* (Dkt. 32).

g.  Debtor fails to disclose the true amount of 8100 Lakeview's secured claim which includes pre-Petition attorneys' fees and interest at the contract rate through the Petition Date, and that pursuant to such Promissory Note, 8100 Lakeview is entitled to its post-petition attorneys' fees, interest and costs.

[Debtor's response: The amount of the proof of claim filed by Lakeview is stated above. Because the value of the Property exceeds the amount of the claim, Lakeview is entitled to seek payment of its post-petition attorneys' fees, interest and costs.]

h.  Debtor fails to disclose any current financial information on the funder of the Plan. All financial information provided is almost two (2) years old.

[Debtor's response: Attached hereto as **Exhibit "C"** are the complete federal tax returns for tax years 2020 and 2021 filed by Dr. Deleons Woman's Healthcare Clinic PA, the owner of which is Maria Usuga. Ms. Usuga will use the profits from the medical clinic to fund the payments under the Plan until the Property is sold. The Debtor submits that these tax returns are adequate to demonstrate the ability of Ms. Usuga to fund the Plan payments.]

i.  Debtor fails to disclose how it arrived at its proposed interest rate.

[Debtor's response: The Debtor proposed an interest rate of 7% to be paid to Lakeview under the Plan because the proposed rate satisfies the requirements of 11 U.S.C. Section 1129(b).]

### Current Operations

**3.04**   The Debtor's current operations will be reflected in its monthly operating reports filed with the Court.

### Projected Income and Expenses, Post-Confirmation Management

**3.05**   The Debtor's projections of Plan payments are set forth on ***Exhibit "B"*** attached hereto.

Post-Confirmation management of the Debtor shall continue to be Maria Usuga, managing member of the Debtor.

### Source of Information for Disclosure Statement

**3.06**   The source of information for this Disclosure Statement is the Debtor and its records, as well as the filings in this case.

## ARTICLE IV
## CHAPTER 7 LIQUIDATION ANALYSIS

**4.01**    Section 1129(a)(7) of the Bankruptcy Code requires that a Chapter 11 plan of reorganization must provide at least as much value to each Impaired Creditor as could be realized in a liquidation under Chapter 7 of the Bankruptcy Code.

In determining whether the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtor's assets in Chapter 7. Such amounts must then be reduced by the costs and expenses of the liquidation. Further reductions would be required to eliminate cash and asset liquidation proceeds that would be applied to Secured Claims and amounts necessary to satisfy Priority Claims that are senior to general Unsecured Claims (and Administrative Expense Claims that may result from the termination of the Debtor's business and the liquidation of its assets).

### 4.02    Asset Values

As of the Petition Date the Debtor owned the Assets described in Section 3.02 above.  All the Debtor's property is Collateral for the Secured Claim of 8100 Lakeview, LLC.  The Debtor believes that in a Chapter 7 case the trustee would allow 8100 Lakeview, LLC to foreclose on its collateral. The Debtor estimates that in such a foreclosure the proceeds of sale would be approximately 75% of the Property's market value.

### 4.03    Liquidation Analysis

Liabilities are shown in the amounts scheduled by the Debtor.

### Assets in Chapter 7 liquidation

| | |
|---|---|
| Property (75% of market value) | $1,215,000.00 |
| Total Assets in Ch. 7 | $1,215,000.00 |

### Liabilities

| | |
|---|---|
| Administrative Expenses and US Trustee Fees | $10,000[3] |
| Secured Claims of Garland ISD | $9,320 |
| Secured Claims of Dallas County | $8,146 |
| Secured Claims of 8100 Lakeview, LLC | $439,329 |
| General Unsecured Claims | $11,672 |
| Insider Claims | $0 |
| Total Liabilities | $478,467 |

---

[3] Debtor's estimate.

**NET WORTH IN CH. 7 LIQUIDATION**                                    **$736,533**

*NOTE:*

- **This Plan pays all Allowed Secured and Unsecured Claims in full, with interest. Therefore, the Plan pays Claimants at least as much as they would receive in a Chapter 7 liquidation.**

## ARTICLE V
## SUMMARY OF THE PLAN

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.

| CLASSIFICATION OF CLAIMS |
| --- |
| Class 1: Allowed Secured Claims of Garland ISD |
| Class 2: Allowed Secured Claims of Dallas County |
| Class 3: Allowed Secured Claims of 8100 Lakeview, LLC |
| Class 4: Allowed General Unsecured Claims Other than Insider Claims |
| Class 5: Allowed Insider Claims |
| Class 6: Allowed Equity Interests |

## ARTICLE VI
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

**A. A. _NON-CLASSIFIED CLAIMS._** The following Claims are not classified, pursuant to Bankruptcy Code Section 1123:

**Treatment of Administrative Claims**. Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. On or before the Effective Date, the Debtor or Reorganized Debtor shall pay or have paid in full all Allowed Administrative Claims. All Allowed Administrative Claims shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion. Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report. Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law.

**Treatment of Professional Fee Administrative Claims.** All persons who are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections

330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**Treatment of Priority Tax Claims.** Priority Tax Claims, if any, shall be paid in full in 48 equal monthly installments of principal plus interest accruing from the Petition Date at the rate of 12% per annum. Equal payments of principal and interest will commence on the first day of the first month after the Effective Date and continue on the first day of each month thereafter until the Claims are paid in full. The Debtor does not believe any such Claims exist.

**Treatment of Other Priority Claims**. All Priority Unsecured Claims other than Priority Tax Claims, if any, will be paid in full over a period of six (6) months, with interest accruing from the Effective Date at the rate of 2% per annum. Equal payments of principal and interest will commence on the first day of the first month after the Effective Date and continue on the first day of each month thereafter until the Claims are paid in full. The Debtor does not believe any such Claims exist.

**Title 28 U.S.C. Section 1930 Fees.** The Reorganized Debtor shall pay all post-Confirmation fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Reorganized Debtor is otherwise released from such obligations by the Court.

**B. *CLASSIFIED CLAIMS.*** The following Claims are classified pursuant to Bankruptcy Code Section 1123, and are treated as follows:

**General Provisions Regarding Treatment of Claims.**

**No pre-payment penalty**. No Claimant shall be entitled to a pre-payment penalty if their Claim is paid early.

**Plan voting.** Impaired Claims are entitled to vote to accept or reject the Plan.

**Default remedies.** Debtor/Reorganized Debtor shall have twenty (20) days after notice to cure any default under the plan. In the event the Debtor/Reorganized Debtor fails to cure the default within 20 days after receipt of written notice from the affected Claimant, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to state law outside of the Bankruptcy Court. The Debtor/Reorganized Debtor shall only be entitled to two notices of default. In the event of a third default, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to contract or state law outside the Bankruptcy Court without further notice.

**Lien rights.** Allowed Secured Creditors shall retain their pre-Petition Date Liens until paid in full as provided in this Plan.

**Bifurcation of Partially Secured Claims.** Should the value of the Collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the Collateral and a general Unsecured Claim for the remainder, pursuant to Bankruptcy Code §506(d).

### Class 1: Allowed Secured Claims of Garland Independent School District

These Claims shall be paid in full by the Reorganized Debtor's payment of equal, consecutive monthly installments of principal and interest commencing on the first day of the first full month following the Effective Date and continuing through sixty (60) months from the Petition Date. Interest shall accrue at the rate of twelve percent (12%) per annum from the Petition Date until these Claims are paid in full. In the event the Reorganized Debtor sells, conveys, or transfers the Property before the expiration of 60 months from the Petition Date, these Claims shall be paid in full at the closing of the sale or transfer. These Claims are IMPAIRED.

### Class 2: Allowed Secured Claims of Dallas County

These Claims shall be paid in full by the Reorganized Debtor's payment of equal, consecutive monthly installments of principal and interest commencing on the first day of the first full month following the Effective Date and continuing through sixty (60) months from the Petition Date. Interest shall accrue at the rate of twelve percent (12%) per annum from the Petition Date until these Claims are paid in full. In the event the Reorganized Debtor sells, conveys, or transfers the Property before the expiration of 60 months from the Petition Date, these Claims shall be paid in full at the closing of the sale or transfer. These Claims are IMPAIRED.

### Class 3: Allowed Secured Claims of 8100 Lakeview, LLC

These Claims shall be paid in full by the Reorganized Debtor's payment of equal, consecutive monthly installments of principal and interest commencing on the first day of the first full month following the Effective Date and continuing through sixty (60) months from the Petition Date. The Allowed Claim amount shall be amortized over 15 years so that the final payment at the end of the Plan term shall be a balloon payment. Interest shall accrue at the rate of seven percent (7%) per annum from the Effective Date until these Claims are paid in full. In the event the Reorganized Debtor sells, conveys, or transfers the Property before the expiration of 60 months from the Effective Date, these Claims shall be paid in full at the closing of the sale or transfer. These Claims are IMPAIRED.

### Class 4: Allowed General Unsecured Claims other than Insider Claims

Class 4 Claimants shall be paid 100 percent (100%) of their claims over thirty-six (36) months from the Effective Date. Equal payments of principal and interest at 2% per annum shall commence on the first day of the first month following the Effective Date and continue on the first day of each month thereafter for a total of 36 months. In the event the Reorganized Debtor sells, conveys, or transfers the Property before the expiration of 36 months from the Effective Date, these Claims shall be paid in full at the closing of the sale or transfer. These Claims are IMPAIRED.

**Class 5: Allowed Insider Claims**

Class 5 shall consist of the Allowed Claims of Insiders of the Debtor.  Class 5 Claims shall receive nothing under this Plan. These Claims are IMPAIRED.

**Class 6 - Allowed Equity Interests**

Class 6 shall consist of Allowed Equity Interests in the Debtor. Class 6 Interests shall be retained by their owners but shall receive no dividends or other distributions on these Interests until Classes 1 – 4 are paid in full pursuant to this Plan. These Interests are not Impaired.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF PLAN

**7.01  Implementation of Plan**.  This Plan will be substantially consummated by the commencement of payments as called for above. The Reorganized Debtor will promptly market the Property for sale and use the proceeds of sale to pay all Claims in full.  Until the sale occurs the Plan payments described above will be funded by the Owner of the Debtor.   The Owner of the Debtor operates a medical practice and the medical practice will make the payments called for by the Plan.  .

The Debtor's projections for sources and uses of cash, including payments to be made under the Plan, are attached hereto as **Exhibit B**. Debtor's owner, Maria Usuga, will provide funds to make payments to Allowed Claimants in the event the Debtor does not have sufficient operating income to make such payments. Ms. Usuga owns a separate medical practice, Dr Deleons Woman's Healthcare Clinic PA, which will fund these payments. A copy of Dr Deleons Woman's Healthcare Clinic PA's recent tax returns are attached hereto as **Exhibit "C"** and incorporated herein by this reference.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.01  Assumption and Rejection of Executory Contracts and Unexpired Leases**. All executory contracts and unexpired leases not expressly assumed by the Debtor as of the Confirmation Date are hereby REJECTED by this Plan.

**8.02  Reservation of Rights**. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and to the terms of this Plan.

**8.03  Bar Date for Claims Based on Rejection**.  If the rejection of an executory contract or an unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Reorganized Debtor or its properties or agents, successors, or assigns, unless a proof of Claim is

filed with the Bankruptcy Court and served upon the Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to or results in a Claim or shall be deemed a waiver of any objections to such Claim if asserted.

**ARTICLE IX**
**FEASIBILITY OF PLAN**

**9.01**   The Debtor asserts that its Plan is feasible based on **Exhibits "B" and "C"**.  The funds necessary to fund the Plan will come from the Owner of the Equity Interests in the Debtor and the sale of the Property. All causes of action shall remain fully vested in the Reorganized Debtor. The failure to identify a claim or cause of action is not specifically a waiver of such claim or cause of action.

**Procedure for Filing Proofs of Claims and Proofs of Interests**

**9.02**   All proofs of claims and proofs of interests must be filed by those Claimants and Equity Interest Holders who have not filed such instruments on or before the Bar Date fixed by the Court.

**9.03**   If Claimants have already filed a proof of claim with the Court or are listed in the Debtor's Schedules as holding non-contingent, liquidated and undisputed claims, a proof of claim need not be filed.  The schedules and amendments thereto are on file with the Court and are open for inspection during regular Court hours.  If the equity security interest of an Equity Interest Holder is properly reflected in the book and records of the Debtor, a proof of interest need not be filed.

**ARTICLE X**
**ALTERNATIVES TO DEBTOR'S PLAN**

**10.01**   If this Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code.  It is also possible that the Debtor's case may be dismissed if this Plan is not confirmed.

**ARTICLE XI**
**RISKS TO CREDITORS UNDER THE PLAN**

**11.01**   Claimants should be aware that there are a number of substantial risks involved in consummation of the Plan.  The Plan contemplates that the sale of lots will generate income

sufficient to pay the Debtor's obligations under the Plan.  The Debtor does not "guarantee" that the expenses will equal those in the projections; however, the Debtor believes that the projections are reasonable.  The Debtor anticipates that the Reorganized Debtor will meet its projections and will be able to pay back its creditors as set forth herein.

## ARTICLE XII
## TAX CONSEQUENCES TO THE DEBTOR

**12.01**   TO ENSURE COMPLIANCE WITH U.S. TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY HOLDERS OF CLAIMS OR INTERESTS OR ANY OTHER PERSONS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR ANY OTHER PERSONS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF U.S. TREASURY DEPARTMENT CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

A. Introduction

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the Debtor and holders of Claims and Interests. The summary is provided for general informational purposes only and is based on the United States Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof (except as otherwise noted below with regard to the American Recovery and Reinvestment Act of 2009), and all of which are subject to change, possibly with retroactive effect. Changes in any of these authorities or in their interpretation could cause the United States federal income tax consequences of the Plan to differ materially from the consequences described below. The United States federal income tax consequences of the Plan are complex and in important respects uncertain. No ruling has been requested from the Internal Revenue Service (the "Service"); no opinion has been requested from Debtors' or The Debtor's counsel concerning any tax consequence of the Plan; and no tax opinion is given by this Disclosure Statement.

The following discussion does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim or Interest in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code. For example, the discussion does not address issues of concern to broker-dealers or other dealers in securities, or foreign (non-U.S.) persons, nor does it address any aspects of state, local, or foreign (non-U.S.) taxation, or the taxation of holders of Interests in a Debtor. In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment

of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated hereunder.

**THE DISCUSSION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.**

B. Certain Definitions

Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein or in the Plan shall have the respective meanings assigned to them in this Article.

"***COD***" shall mean cancellation of indebtedness income.
"***NOL***" shall mean net operating loss.

C. Certain Material Federal Income Tax Consequences to the Debtor

Cancellation of a debtor's debt is generally taxable income to the Debtor. COD is the amount by which the indebtedness of a debtor discharged exceeds any consideration given in exchange therefore. Cancellation of a debt may not necessarily be COD, however. To the extent that a debtor is insolvent, or if a Debtor is in bankruptcy, as is the case here, the Tax Code permits the debtor to exclude the COD from its gross income. The statutory exclusion for COD in a title 11 case generally excludes COD from gross income if the discharge is granted by a court to a debtor under its jurisdiction in a title 11 case, as is sought herein.

The price for the bankruptcy COD exclusion (as well as the insolvency exclusion) is reduction of the debtor's tax attributes to the extent of the COD income, generally in the following order: NOLs for the year of the discharge and NOL carryovers from prior years; general business tax credit carryovers; minimum tax credit available as of the beginning of the year following the year of discharge; net capital loss for the year of discharge and capital loss carryovers from prior years; basis of the debtor's assets; passive activity loss and credit carryovers from the year of discharge; and foreign tax credit carryovers to or from the year of discharge. The reduction of attributes does not occur until after the end of the debtor's tax year in which the COD occurred, so they are available to the debtor in determining the amount of its income, loss and tax liability for the year of discharge.

As a result of the implementation of the Plan, the Debtor may have COD and potential attribute reduction. Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, any resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce their tax liability, if any, otherwise resulting from the implementation of the Plan.

Under section 382 of the Tax Code, if a corporation undergoes an "ownership shift," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation.   The Plan calls for an ownership change and as such any current owner of the Debtor should consult his own tax adviser concerning the effect of the Plan.

The United States federal income tax consequences of payment of Allowed Claims pursuant to the Plan will depend on, among other things, the consideration received, or deemed to have been received, by the holder of the Allowed Claim, whether such holder reports income on the accrual or cash method, whether such holder receives distributions under the Plan in more than one taxable year, whether such holder's Claim is allowed or disputed at the Effective Date, whether such holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the amount of such holder's basis in its Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, its deduction of the loss may be subject to limitations under the Tax Code. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The amount realized by a holder generally will equal the sum of the cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date and/or any subsequent distribution date, less the amount (if any) allocable to Claims for interest.   All holders of Allowed Claims are urged to consult their tax advisors.   A holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453B of the Tax Code.

If the creditors give up all or a portion of their debt in return for stock the Company would change the debt to equity on its books and the Creditor would own their stock with a cost basis equal to the amount of debt given up to purchase it.

D. Importance of Obtaining Professional Tax Assistance

The foregoing discussion is intended only as a summary of certain U.S. federal income tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for general information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances.

    HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

## ARTICLE XIII
## PENDING LITIGATION

**13.01**  8100 Lakeview, LLC filed an *Objection to the Scheduled Claim of KC Capital Group LLC* (Dkt. 32).  The Objection had not been set for a hearing at the time of filing of this Disclosure Statement.

## ARTICLE XIV
## SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE

**14.01**  The Court entered an order on August 14, 2023 granting the Debtor's Application to employ Joyce W. Lindauer as the attorney for the Debtor in this Case.

Dated: October 20, 2023

Respectfully Submitted By:

 */s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St. Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
**ATTORNEYS FOR THE DEBTOR**


 */s/ Maria Usuga*
Managing Member of the Debtor

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| USUGA MANAGEMENT, LLC, | § | CASE NO. 23-31165-sgj11 |
| | § | Chapter 11 |
| Debtor. | § | |

## DEBTOR'S PLAN OF REORGANIZATION

COMES NOW USUGA MANAGEMENT, LLC, ("Debtor"), the Debtor in the above-styled and numbered case, and files this its Plan of Reorganization (the "Plan"). The Debtor is the owner of certain real property located at 8100 Lakeview Parkway, Rowlett, Texas 75088.

The sources and uses of income to fund the Plan are described in more detail in the Disclosure Statement accompanying this Plan. Periodic financial reports will be filed with the Court, as required by the Bankruptcy Code, covering the profitability, projections of cash receipts and disbursements for a reasonable period. These reports shall be available on the Court's PACER site using the Debtor's name and/or case number as referenced above or can be also obtained from Debtor's counsel by written request.

**EXHIBIT "A"**

## TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND USE OF TERMS ................................................................. 3

ARTICLE II - CONCEPT OF THE PLAN ...................................................................... 6

ARTICLE III - GENERAL TERMS AND CONDITIONS ........................................... 6

ARTICLE IV - DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS...................... 7

ARTICLE V- PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS............. 7

ARTICLE VI - MEANS FOR IMPLEMENTATION OF PLAN ................................................ 10

ARTICLE VII - TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES ....................................................................... 10

ARTICLE VIII - ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS ........ 11

ARTICLE IX - EFFECT OF CONFIRMATION ........................................................... 12

ARTICLE X - MISCELLANEOUS PROVISIONS.................................................... 13

ARTICLE XI - MODIFICATION OF THE PLAN ...................................................... 15

ARTICLE XII - RETENTION OF JURISDICTION ................................................... 15

# ARTICLE I
## DEFINITIONS AND USE OF TERMS

**1.01** <u>Defined</u> <u>Terms</u>.  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

"**Administrative Expense Claim**" means an administrative expense or claim described in Bankruptcy Code § 503 and entitled to administrative priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to, Fee Claims.

"**Allowed Amount**" means the amount of any Allowed Claim.

"**Allowed Claim**" means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that: (i) a Proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed with the Bankruptcy Court, or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan; (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, is allowed by a Final Order; or (iii) with respect to an Administrative Expense Claim or Fee Claim, the Administrative Expense Claim or Fee Claim has been approved by a Final Order upon notice and application to the Bankruptcy Court.

"**Assets**" means property of the Estate.

"**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, Debtor, or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

"**Ballot**" means the written ballot to be distributed to Creditors for voting on whether to approve this Plan of reorganization.

"**Bankruptcy Case**" or "**Case**" means this bankruptcy case pending before the Bankruptcy Court.

"**Bankruptcy Code**" or "**Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Northen District of Texas, Dallas Division, or other such court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and "**Bankruptcy Rule**" refers to a specific rule therein.

"**Bar Date**" means October 5, 2023, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim may not be timely filed, except Claims held by governmental agencies.

"**Business Day**" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

"**Claim**" shall have the meaning set forth in Bankruptcy Code § 101(5).

"**Claimant**" or "**Creditor**" means the holder of a Claim.

"**Class**" means any class into which Claims are classified pursuant to the Plan. Each subclass of a class shall be treated as a separate class.

"**Collateral**" means the real or personal property securing a Secured Claim.

"**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order.

"**Confirmation Date**" means the date on which the Order confirming this Plan is entered.

"**Confirmation Hearing**" means the hearing or hearings held before the Bankruptcy Court in which the Debtors will seek Confirmation of this Plan.

"**Confirmation Order**" means the Order confirming this Plan.

"**Contested**" when used with respect to a Claim, means a Claim against the Debtor: (i) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor's Schedules of Assets and Liabilities as undisputed, liquidated, and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (iv) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

"**Debtor**" means USUGA MANAGEMENT, LLC, the Debtor herein. Where the context so requires, "**Debtor**" shall also include the Reorganized Debtor.

"**Disputed**" with respect to a Claim means either: (i) a Claim which has been objected to by the Debtor; or (ii) a Claim that is listed on the Debtor's bankruptcy schedules as "disputed, contingent or unliquidated" and for which such Creditor or Interest holder has not filed a Proof of Claim.

"**Effective Date**" means the thirtieth (30th) day after the Confirmation Date.

"**Estate**" means the bankruptcy estate of the Debtor in this Case.

"**Fee Claim**" means a Claim under Bankruptcy Code §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Bankruptcy Case.

"**Fee Application**" means an application filed with the Bankruptcy Court for allowance of a Fee Claim.

"**Final Order**" means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

"**Impaired**" means the treatment of an Allowed Claim or Interest pursuant to the Plan unless, with respect to such Claim or Interest, either: (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (iii) the Plan provides that on the Effective Date, the holder of such Claim or Interest receives, on account of such Claim or Interest, cash equal to the Allowed Amount of such Claim or Interest.

"**Insider**" has the meaning provided by § 101(31) of the Bankruptcy Code.

"**Interest**" means any equity or ownership interest in the Debtor.

"**Lien**" means any charge against or interest in property to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, and deed of trust, mortgage and property tax lien.

"**Order**" means an Order of the Bankruptcy Court.

"**Petition Date**" means June 5, 2023, the date on which the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

"**Plan**" means this *Plan of Reorganization*, including any amendments, modifications or corrections made thereto pursuant to the Bankruptcy Code.

"**Priority Tax Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

"**Priority Wage Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(4).

"**Priority Unsecured Claim**" means an Unsecured Claim entitled to priority under Bankruptcy Code § 507(a), except Priority Tax Claims and Priority Wage Claims.

"**Proof of Claim**" means a written statement setting forth a Creditor's Claim filed in this Case and conforming substantially to the appropriate official form.

"**Reorganized Debtor**" means the Debtor as it exists after Confirmation of the Plan.

"**Schedules and Statements**" means the Debtor's bankruptcy schedules A/B, D-H and the Statement of Financial Affairs.

"**Secured Claim**" means a Claim that is secured within the meaning of Bankruptcy Code §506(a). Should the value of the Collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the Collateral and a general Unsecured Claim for the remainder, pursuant to Bankruptcy Code §506(d).

"**Unsecured Claim**" means any Claim that is not a Secured Claim or an Administrative Expense Claim and that is not entitled to priority treatment under Bankruptcy Code § 507.

**ARTICLE II**
**CONCEPT OF THE PLAN**

**2.01**     The Plan is a Plan of Reorganization. The Debtor will continue its business after Confirmation of this Plan. The Debtor is the owner of the real property located at 8100 Lakeview Parkway, Rowlett, Texas 75088 (the "Property"). Under the Plan the Debtor will make installment payments with interest to all Creditors pending the sale of the Property, and once the property is sold the Debtor will pay all Claims in full. The Owners will provide the funds to make the Plan payments called for by this Plan.

**2.02**     The Plan proposes to pay all Creditors in full on their Allowed Claims.

**ARTICLE III**
**GENERAL TERMS AND CONDITIONS**

**3.01**     **Treatment of Claims**. This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive payments under the Plan. The Plan is designed to ensure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02**     **Time for Filing Claims**. The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such

Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

**3.03**    **Modification to the Plan**.  In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing.

**ARTICLE IV**
**DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.

| CLASSIFICATION OF CLAIMS |
| --- |
| Class 1: Allowed Secured Claims of Garland ISD |
| Class 2: Allowed Secured Claims of Dallas County |
| Class 3: Allowed Secured Claims of 8100 Lakeview, LLC |
| Class 4: Allowed General Unsecured Claims Other than Insider Claims |
| Class 5: Allowed Insider Claims |
| Class 6: Allowed Equity Interests |

**ARTICLE V**
**PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS**

*A. **NON-CLASSIFIED CLAIMS.***  The following Claims are not classified, pursuant to Bankruptcy Code Section 1123:

**Treatment of Administrative Claims**.  Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and

discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. On or before the Effective Date, the Debtor or Reorganized Debtor shall pay or have paid in full all Allowed Administrative Claims. All Allowed Administrative Claims shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion. Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report. Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law.

**Treatment of Professional Fee Administrative Claims.** All persons who are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**Treatment of Priority Tax Claims.** Priority Tax Claims, if any, shall be paid in full in 48 equal monthly installments of principal plus interest accruing from the Petition Date at the rate of 12% per annum. Equal payments of principal and interest will commence on the first day of the first month after the Effective Date and continue on the first day of each month thereafter until the Claims are paid in full. The Debtor does not believe any such Claims exist.

**Treatment of Other Priority Claims**. All Priority Unsecured Claims other than Priority Tax Claims, if any, shall be paid will be paid in full over a period of six (6) months, with interest accruing from the Effective Date at the rate of 2% per annum. Equal payments of principal and interest will commence on the first day of the first month after the Effective Date and continue on the first day of each month thereafter until the Claims are paid in full. The Debtor does not believe any such Claims exist.

**Title 28 U.S.C. Section 1930 Fees.** The Reorganized Debtor shall pay all post-Confirmation fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Reorganized Debtor is otherwise released from such obligations by the Court.

**B. *CLASSIFIED CLAIMS.*** The following Claims are classified pursuant to Bankruptcy Code Section 1123, and are treated as follows:

**General Provisions Regarding Treatment of Claims.**

**No pre-payment penalty**. No Claimant shall be entitled to a pre-payment penalty if their Claim is paid early.

**Plan voting.** Impaired Claims are entitled to vote to accept or reject the Plan.

**Default remedies.** Debtor/Reorganized Debtor shall have twenty (20) days after notice to cure any default under the plan. In the event the Debtor/Reorganized Debtor fails to cure the default within 20 days after receipt of written notice from the affected Claimant, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to state law outside of the Bankruptcy Court. The Debtor/Reorganized Debtor shall only be entitled to two notices of default. In the event of a third default, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to contract or state law outside the Bankruptcy Court without further notice.

**Lien rights.** Allowed Secured Creditors shall retain their pre-Petition Date Liens until paid in full as provided in this Plan.

**Bifurcation of Partially Secured Claims.** Should the value of the Collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the Collateral and a general Unsecured Claim for the remainder, pursuant to Bankruptcy Code §506(d).

### Class 1: Allowed Secured Claims of Garland Independent School District

These Claims shall be paid in full by the Reorganized Debtor's payment of equal, consecutive monthly installments of principal and interest commencing on the first day of the first full month following the Effective Date and continuing through sixty (60) months from the Petition Date.  Interest shall accrue at the rate of twelve percent (12%) per annum from the Petition Date until these Claims are paid in full. In the event the Reorganized Debtor sells, conveys, or transfers the Property before the expiration of 60 months from the Petition Date, these Claims shall be paid in full at the closing of the sale or transfer. These Claims are IMPAIRED.

### Class 2: Allowed Secured Claims of Dallas County

These Claims shall be paid in full by the Reorganized Debtor's payment of equal, consecutive monthly installments of principal and interest commencing on the first day of the first full month following the Effective Date and continuing through sixty (60) months from the Petition Date. Interest shall accrue at the rate of twelve percent (12%) per annum from the Petition Date until these Claims are paid in full. In the event the Reorganized Debtor sells, conveys, or transfers the Property before the expiration of 60 months from the Petition Date, these Claims shall be paid in full at the closing of the sale or transfer. These Claims are IMPAIRED.

### Class 3: Allowed Secured Claims of 8100 Lakeview, LLC

These Claims shall be paid in full by the Reorganized Debtor's payment of equal, consecutive monthly installments of principal and interest commencing on the first day of the first full month following the Effective Date and continuing through sixty (60) months from the Effective Date. The Allowed Claim amount shall be amortized over 15 years so that the final

payment at the end of the Plan term shall be a balloon payment.  Interest shall accrue at the rate of seven percent (7%) per annum from the Effective Date until these Claims are paid in full. In the event the Reorganized Debtor sells, conveys, or transfers the Property before the expiration of 60 months from the Effective Date, these Claims shall be paid in full at the closing of the sale or transfer. These Claims are IMPAIRED.

### Class 4: Allowed General Unsecured Claims other than Insider Claims

Class 4 Claimants shall be paid 100 percent (100%) of their claims over thirty-six (36) months from the Effective Date. Equal payments of principal and interest at 2% per annum shall commence on the first day of the first month following the Effective Date and continue on the first day of each month thereafter for a total of 36 months. In the event the Reorganized Debtor sells, conveys, or transfers the Property before the expiration of 36 months from the Effective Date, these Claims shall be paid in full at the closing of the sale or transfer. These Claims are IMPAIRED.

### Class 5: Allowed Insider Claims

Class 5 shall consist of the Allowed Claims of Insiders of the Debtor.  Class 5 Claims shall receive nothing under this Plan. These Claims are IMPAIRED.

### Class 6 - Allowed Equity Interests

Class 6 shall consist of Allowed Equity Interests in the Debtor. Class 6 Interests shall be retained by their owners but shall receive no dividends or other distributions on these Interests until Classes 1 – 4 are paid in full pursuant to this Plan. These Interests are not Impaired.

### ARTICLE VI
### MEANS FOR IMPLEMENTATION OF PLAN

**6.01    Implementation of Plan**.  This Plan will be substantially consummated by the commencement of payments as called for above. The Reorganized Debtor will promptly market the Property for sale and use the proceeds of sale to pay all Claims in full.  Until the sale occurs the Plan payments described above will be funded by the Owner of the Debtor.  The Owner of the Debtor operates a medical practice and the medical practice will make the payments called for by the Plan.  Further details regarding the implementation of the Plan and projections of the Debtor's income, expenses and Plan payments are provided in the Debtor's Disclosure Statement accompanying this Plan.

### ARTICLE VII
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01    Assumption and Rejection of Executory Contracts and Unexpired Leases**.  All executory contracts and unexpired leases not expressly assumed by the Debtor as of the Confirmation Date are hereby REJECTED by this Plan.

**7.02** __Reservation of Rights__. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code).

**7.03** __Bar Date for Claims Based on Rejection__. If the rejection of an executory contract or an unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Plan Proponent or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the  Reorganized Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to or results in a Claim or shall be deemed a waiver of any objections to such Claim if asserted.

## ARTICLE VIII
## ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS

**8.01** __The Debtor's Causes of Action__. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or Reorganized Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of the Creditors subsequent to the Effective Date.  This Plan shall not estop the Debtor or Reorganized Debtor from asserting any claim or cause of action whether disclosed or not.

The Debtor hereby specifically retains and preserves all causes of action that have been brought or could be brought in *Usuga Management, LLC v. 8100 Lakeview, LLC*, Case No. DC-23-04204 in the 68th Judicial District Court of Dallas County, Texas.

**8.02** __Objections to Claims.__ Any party authorized by the Bankruptcy Code may object to the allowance of Pre-Petition Date Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed.  All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor or Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.  Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim.  If a Claim is Disputed in whole or in part because the Debtor or Reorganized Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim.  In addition, any party authorized by the Bankruptcy Code, at any time, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE IX
## EFFECT OF CONFIRMATION

**9.01**    <u>**Discharge and Release of Debtor**</u>.  Pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan <u>does</u> discharge the Debtor.

**9.02**    <u>**Legal Binding Effect**</u>.  The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan.  The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.03**    <u>**Discharge**</u>.  Confirmation of the Plan shall result in the inability to commence or continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against the Debtor or Reorganized Debtor.

Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined by the Confirmation of the Plan: (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or Reorganized Debtor, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor or Reorganized Debtor on account of such Claims; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor or Reorganized Debtor  on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor or Reorganized Debtor on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such Claims; provided, however, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.  Creditors shall not pursue claims against non-debtor third parties at the same time as their claims are being paid through the Plan.

**9.04**    <u>**Satisfaction of Claims and Interests**</u>

Except as otherwise provided by the Plan, the consideration distributed under the Plan shall be in complete satisfaction of all Claims of any Creditor against the Debtor, including Claims arising prior to the Effective Date.

**9.05**    **Temporary Injunction**

Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold, or may hold Claims or Interests against the Debtor, are enjoined on and after the Effective Date as long as the Plan is not in default and has not been completed against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor or any third-party guarantor on account of Claims against the Debtor; (ii) enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any third-party guarantor or any assets or property of same; or (iii) creation, perfection, or enforcement of any encumbrance of any kind against the Debtor or any third-party guarantor arising from a Claim. Such injunction expires at the end of the Plan term at which time all Allowed Claims will have been paid in accordance with the terms of the Plan.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.01**    **Request for Relief Under Bankruptcy Code Section 1129**.  In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Plan Proponent reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02**    **Revocation**.  The Plan Proponent reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03**    **Effect of Withdrawal or Revocation**.  If the Plan Proponent revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**10.04**    **Due Authorization by Creditors**.  Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05**    **Entire Agreement**.  This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06**    **Section 1146 Exemption.**  Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the

transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07    Provisions Governing Distributions.** All payments and distributions under the Plan shall be made by the Reorganized Debtor as indicated.  Any payments or distributions to be made by the Plan Proponent pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court.  Any payment or distribution by the Reorganized Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed).  All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date.  After such date, all unclaimed property shall remain the property of the Reorganized Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests for reissuance of any check shall be made directly to the Plan Proponent by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Reorganized Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08    Governing Law.**   Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**10.09    Notices to Debtor.**   Any notices required to be given to the Debtor under this Plan shall be mailed by certified mail to the Debtor at 3705 Lakeview Parkway, Suite 215, Rowlett TX 75088 and to Debtor's counsel, Joyce Lindauer, at 1412 Main St., Suite 500, Dallas TX 75202 and by email at joyce@joycelindauer.com.

## ARTICLE XI
## MODIFICATION OF THE PLAN

 **11.01** The Debtor may propose amendments to or modifications of this Plan at any time prior to Confirmation, upon notice to all parties-in-interest.  After Confirmation, the Reorganized Debtor may, with approval of the Court and so long as it does not materially or adversely affect the interest of creditors, modify to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE XII
## RETENTION OF JURISDICTION

 Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

 **12.01** **Allowance of Claims**.  To hear and determine the allowability of all Claims upon objections to such Claims.

 **12.02** **Executory Contracts and Unexpired Leases Proceedings**.  To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to Section 365 and 1123 of the Code and Article VII of the Plan.

 **12.03** **Plan Interpretation**.  To resolve controversies and disputes regarding the interpretation of the Plan.

 **12.04** **Plan Implementation**.  To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

 **12.05** **Plan Modification**.  To modify the Plan pursuant to Section 1127 of the Code and applicable Bankruptcy Rules.

 **12.06** **Adjudication of Controversies**.  To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

 **12.07** **Injunctive Relief**.  To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

 **12.08** **Interpleader Action**.  To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

 **12.09** **Correct Minor Defects**.  To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**12.10** **Authorization of Fees and Expenses**.  To review and authorize payment of professional fees incurred prior to the Effective Date.

**12.11** **Post-Confirmation Orders Regarding Confirmation**.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**12.12** **Final Decree**.  To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.


Dated: August 29, 2023.

Respectfully Submitted,


  */s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St. Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR THE DEBTOR




  */s/ Maria Usuga*
Managing Member of the Debtor

# CHAPTER 11 DEBTOR PROJECTIONS
# Usuga Management LLC

|  |  | May | Jun | Jul | Aug | Sep |
|---|---|---|---|---|---|---|
|  |  | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 |
| **INCOME** | | | | | | |
|  | Owner Contributions | 18,443.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 |
|  | Legal Retainer | 6,500.00 | | | | |
|  | **NET INCOME** | 24,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 |
| **EXPENSES** | | | | | | |
|  | Expenses | | | | | |
|  | **TOTAL EXPENSES** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **PLAN PAYMENTS** | **Class** | | | | | |
|  | - Allowed Administrative Claims | 20,000.00 | | | | |
|  | 1 Allowed Secured Claims of Garland ISD | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 |
|  | 2 Allowed Secured Claims of Dallas County | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 |
|  | 3 Allowed Secured Claims of 8100 Lakeview LLC | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 |
|  | 4 Allowed General Unsecured Claims (non-insider) | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 |
|  | 5 Allowed Insider Claims | | | | | |
|  | 6 Allowed Equity Interests | | | | | |
|  | **TOTAL PLAN PAYMENTS** | 24,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 |
| **NET INCOME** | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **CUMULATIVE INCOME** | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| CALCULATION NOTES | | |
|---|---|---|
| 1 | Allowed Secured Claims of Garland ISD (fn) | Pay @ 12% for 5 yrs from petition |
| 2 | Allowed Secured Claims of Dallas County (fn) | Pay @ 12% for 5 yrs from petition |
| 3 | Allowed Secured Claims of 8100 Lakeview LLC | Pay @ 7% for 60 mo using 15 year amortization, then balloon. |
| 4 | Allowed General Unsecured Claims (non-insider) | Pay @ 2% for 36 mo. |
| 5 | Allowed Insider Claims | No payments under plan. |
| 6 | Allowed Equity Interests | No dividends or other distributions until classes 1-4 are paid. |
| fn | *Calculations of post-petition interest assume 6 mo post-petition interest, followed by 54 monthly payments.* | |

# EXHIBIT "B"

| Oct | Nov | Dec | Jan | Feb | March | Apr | May | Jun |
|---|---|---|---|---|---|---|---|---|
| Month | Month | Month | Month | Month | Month | Month | Month | Month |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| | | | | | | | | |
| 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 |
| | | | | | | | | |
| 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 |
| | | | | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | |
| 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 |
| 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 |
| 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 |
| 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 |
| | | | | | | | | |
| 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| | Claim | | Post-Pet Int. | | Pay Basis | |
|---|---|---|---|---|---|---|
| | $ | 9,319.60 | $ | 559.18 | $ | 9,319.60 |
| | $ | 8,145.72 | $ | 488.74 | $ | 8,145.72 |
| | $ | 465,000 | | | $ | 465,000.00 |
| | $ | 12,000.00 | | | $ | 12,000.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | March | Apr |
|---|---|---|---|---|---|---|---|---|---|
| Month | Month | Month | Month | Month | Month | Month | Month | Month | Month |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 |
| 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 |
| 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 |
| 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 |
| 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 |
| 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb |
|---|---|---|---|---|---|---|---|---|---|
| Month | Month | Month | Month | Month | Month | Month | Month | Month | Month |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 |
| 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 |
| 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 |
| 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 |
| 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 |
| 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 | 343.71 |
| 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 | 4,943.42 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| March | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|
| Month | Month | Month | Month | Month | Month | Month | Month | Month | Month |
| 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 |
| 4,943.42 | 4,943.42 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 |
| 4,943.42 | 4,943.42 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 |
| 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 |
| 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 |
| 343.71 | 343.71 | | | | | | | | |
| 4,943.42 | 4,943.42 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| Jan | Feb | March | Apr | May | Jun | Jul | Aug | Sep | Oct |
|---|---|---|---|---|---|---|---|---|---|
| Month | Month | Month | Month | Month | Month | Month | Month | Month | Month |
| 45 | 46 | 47 | 48 | 49 | 50 | 51 | 52 | 53 | 54 |
| 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 |
| 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 | 224.20 |
| 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 | 195.96 |
| 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 |
| 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 | 4,599.71 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| Nov | Dec | Jan | Feb | March | Apr |
|---|---|---|---|---|---|
| Month | Month | Month | Month | Month | Month |
| 55 | 56 | 57 | 58 | 59 | 60 |
| 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 |
| 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 |
| 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 | 4,179.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| Form **1120-S** | **U.S. Income Tax Return for an S Corporation** | OMB No. 1545-0123 |
|---|---|---|

▶ Do not file this form unless the corporation has filed or
is attaching Form 2553 to elect to be an S corporation.
▶ Go to *www.irs.gov/Form1120S* for instructions and the latest information.

**2020**

Department of the Treasury
Internal Revenue Service

For calendar year 2020 or tax year beginning _____ , 2020, ending _____ , 20 ____

| **A** S election effective date | TYPE OR PRINT | **Name** Dr Deleons Woman's Healthcare Clinic PA | **D** Employer identification number |
|---|---|---|---|
| 01/01/2016 | | | 75-2909401 |
| **B** Business activity code number (see instructions) | | Number, street, and room or suite no. If a P.O. box, see instructions. PO Box 2849 | **E** Date incorporated 01/20/2003 |
| 621111 | | City or town, state or province, country, and ZIP or foreign postal code | **F** Total assets (see instructions) |
| **C** Check if Sch. M-3 attached ☐ | | Rowlett                    TX          75030 | $ 478,295 |

**G** Is the corporation electing to be an S corporation beginning with this tax year? ☐ Yes ☒ No   If "Yes," attach Form 2553 if not already filed

**H** Check if: **(1)** ☐ Final return **(2)** ☐ Name change **(3)** ☐ Address change **(4)** ☐ Amended return **(5)** ☐ S election termination or revocation

**I** Enter the number of shareholders who were shareholders during any part of the tax year . . . . . . . . . ▶ 1

**J** Check if corporation: **(1)** ☐ Aggregated activities for section 465 at-risk purposes **(2)** ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| | | | | |
|---|---|---|---|---|
| **Income** | **1a** Gross receipts or sales . . . . . . . . | **1a** | 1,718,015 | |
| | **b** Returns and allowances . . . . . . . . | **1b** | 7,058 | |
| | **c** Balance. Subtract line 1b from line 1a . . . . . . . . . . . . . . . . | **1c** | | 1,710,957 |
| | **2** Cost of goods sold (attach Form 1125-A) . . . . . . . . . . . . . . | **2** | | 28,649 |
| | **3** Gross profit. Subtract line 2 from line 1c . . . . . . . . . . . . . . | **3** | | 1,682,308 |
| | **4** Net gain (loss) from Form 4797, line 17 (attach Form 4797) . . . . . . . . | **4** | | 0 |
| | **5** Other income (loss) (see instructions—attach statement) . . . . . . . . | **5** | | 0 |
| | **6** Total income (loss). Add lines 3 through 5 . . . . . . . . . . . ▶ | **6** | | 1,682,308 |
| **Deductions (see instructions for limitations)** | **7** Compensation of officers (see instructions—attach Form 1125-E) . . . . . | **7** | | 348,000 |
| | **8** Salaries and wages (less employment credits) . . . . . . . . . . . | **8** | | 653,888 |
| | **9** Repairs and maintenance . . . . . . . . . . . . . . . . . . | **9** | | 6,180 |
| | **10** Bad debts . . . . . . . . . . . . . . . . . . . . . . . | **10** | | |
| | **11** Rents . . . . . . . . . . . . . . . . . . . . . . . . | **11** | | 133,225 |
| | **12** Taxes and licenses . . . . . . . . . . . . . . . . . . . . | **12** | | 87,282 |
| | **13** Interest (see instructions) . . . . . . . . . . . . . . . . . . | **13** | | 35,985 |
| | **14** Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | **14** | | 17,368 |
| | **15** Depletion **(Do not deduct oil and gas depletion.)** . . . . . . . . . | **15** | | |
| | **16** Advertising . . . . . . . . . . . . . . . . . . . . . . | **16** | | 586 |
| | **17** Pension, profit-sharing, etc., plans . . . . . . . . . . . . . . . | **17** | | 9,747 |
| | **18** Employee benefit programs . . . . . . . . . . . . . . . . . | **18** | | 48,498 |
| | **19** Other deductions (attach statement) . . . . . . . . . . . . . . | **19** | | 414,603 |
| | **20** Total deductions. Add lines 7 through 19 . . . . . . . . . . . ▶ | **20** | | 1,755,362 |
| | **21** Ordinary business income (loss). Subtract line 20 from line 6 . . . . . . | **21** | | -73,054 |
| **Tax and Payments** | **22a** Excess net passive income or LIFO recapture tax (see instructions) . . . | **22a** | 0 | |
| | **b** Tax from Schedule D (Form 1120-S) . . . . . . . | **22b** | 0 | |
| | **c** Add lines 22a and 22b (see instructions for additional taxes) . . . . . . | **22c** | | 0 |
| | **23a** 2020 estimated tax payments and 2019 overpayment credited to 2020 | **23a** | | |
| | **b** Tax deposited with Form 7004 . . . . . . . . . | **23b** | 0 | |
| | **c** Credit for federal tax paid on fuels (attach Form 4136) . | **23c** | | |
| | **d** Reserved for future use . . . . . . . . . . . | **23d** | | |
| | **e** Add lines 23a through 23d . . . . . . . . . . . . . . . . . | **23e** | | 0 |
| | **24** Estimated tax penalty (see instructions). Check if Form 2220 is attached . . ▶ ☐ | **24** | | 0 |
| | **25** Amount owed. If line 23e is smaller than the total of lines 22c and 24, enter amount owed | **25** | | 0 |
| | **26** Overpayment. If line 23e is larger than the total of lines 22c and 24, enter amount overpaid | **26** | | 0 |
| | **27** Enter amount from line 26:  Credited to 2021 estimated tax ▶ _____ Refunded ▶ | **27** | | 0 |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| ▶ Signature of officer | 09/15/2020 Date | ▶ President Title | May the IRS discuss this return with the preparer shown below? See instructions. ☒ Yes ☐ No |
|---|---|---|---|

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☒ if self-employed | PTIN |
|---|---|---|---|---|
| Dave Morgan | Dave Morgan | | | P00959095 |
| Firm's name ▶ DAVEY L MORGAN CPA | | | Firm's EIN ▶ | |
| Firm's address ▶ 2229 MOSS TRL          Garland          TX          75044 | | | Phone no. | (972)824-7499 |

For Paperwork Reduction Act Notice, see separate instructions.          Cat. No. 11510H          Form **1120-S** (2020)

**EXHIBIT "C"**

Form 1120-S (2020)                                                                                                                    Page **2**

| **Schedule B** | **Other Information** (see instructions) | | | | Yes | No |
|---|---|---|---|---|---|---|
| 1 | Check accounting method:   **a** ☒ Cash   **b** ☐ Accrual | | | | | |
| | **c** ☐ Other (specify) ▶ | | | | | |
| 2 | See the instructions and enter the: | | | | | |
| | **a** Business activity ▶ Offices of Physicians and Dentists   **b** Product or service ▶ OB/GYN Medical Practice | | | | | |
| 3 | At any time during the tax year, was any shareholder of the corporation a disregarded entity, a trust, an estate, or a nominee or similar person? If "Yes," attach Schedule B-1, Information on Certain Shareholders of an S Corporation . . | | | | | x |
| 4 | At the end of the tax year, did the corporation: | | | | | |
| **a** | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total stock issued and outstanding of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   . | | | | | x |

| (I) Name of Corporation | (II) Employer Identification Number (if any) | (III) Country of Incorporation | (IV) Percentage of Stock Owned | (v) If Percentage In (iv) Is 100%, Enter the Date (if any) a Qualified Subchapter S Subsidiary Election Was Made |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| **b** | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below   .   .   .   .   .   .   . | | | | | x | |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| Usuga Management LLC | 83-1706185 | LLC | US | 100 |
| Bella Skin and Wellness Center LLC | 84-1876118 | LLC | US | 100 |
| | | | | |
| | | | | |

| | | | Yes | No |
|---|---|---|---|---|
| **5a** | At the end of the tax year, did the corporation have any outstanding shares of restricted stock?   .   .   .   .   .   .   . | | | x |
| | If "Yes," complete lines (i) and (ii) below. | | | |
| | **(i)**    Total shares of restricted stock   .   .   .   .   .   .   .   .   .   ▶ | | | |
| | **(ii)**   Total shares of non-restricted stock   .   .   .   .   .   .   .   .   ▶ | | | |
| **b** | At the end of the tax year, did the corporation have any outstanding stock options, warrants, or similar instruments?   . | | | x |
| | If "Yes," complete lines (i) and (ii) below. | | | |
| | **(i)**    Total shares of stock outstanding at the end of the tax year   ▶ | | | |
| | **(ii)**   Total shares of stock outstanding if all instruments were executed ▶ | | | |
| 6 | Has this corporation filed, or is it required to file, **Form 8918**, Material Advisor Disclosure Statement, to provide information on any reportable transaction? | | | x |
| 7 | Check this box if the corporation issued publicly offered debt instruments with original issue discount   .   .   .   ▶ ☐ | | | |
| | If checked, the corporation may have to file **Form 8281**, Information Return for Publicly Offered Original Issue Discount Instruments. | | | |
| 8 | If the corporation (a) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to the basis of the asset (or the basis of any other property) in the hands of a C corporation, **and** (b) has net unrealized built-in gain in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years. See instructions   .   .   .   .   ▶ $ | | | |
| 9 | Did the corporation have an election under section 163(j) for any real property trade or business or any farming business in effect during the tax year? See instructions   .   .   . | | | x |
| 10 | Does the corporation satisfy one or more of the following? See instructions   .   .   .   .   .   .   .   .   .   .   . | | | x |
| **a** | The corporation owns a pass-through entity with current, or prior year carryover, excess business interest expense. | | | |
| **b** | The corporation's aggregate average annual gross receipts (determined under section 448(c)) for the 3 tax years preceding the current tax year are more than $26 million and the corporation has business interest expense. | | | |
| **c** | The corporation is a tax shelter and the corporation has business interest expense. | | | |
| | If "Yes," complete and attach Form 8990. | | | |
| 11 | Does the corporation satisfy **both** of the following conditions?   .   .   .   .   .   .   .   .   .   .   . | | | x |
| **a** | The corporation's total receipts (see instructions) for the tax year were less than $250,000. | | | |
| **b** | The corporation's total assets at the end of the tax year were less than $250,000. | | | |
| | If "Yes," the corporation is not required to complete Schedules L and M-1. | | | |

Form **1120-S** (2020)

Form 1120-S (2020)

Page **3**

## Schedule B   Other Information (see instructions) (continued)

| | | | Yes | No |
|---|---|---|---|---|
| 12 | During the tax year, did the corporation have any non-shareholder debt that was canceled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | | x |
| | If "Yes," enter the amount of principal reduction . . . . . . . . . . . . . ▶ $ | | | |
| 13 | During the tax year, was a qualified subchapter S subsidiary election terminated or revoked? If "Yes," see instructions . | | | x |
| 14a | Did the corporation make any payments in 2020 that would require it to file Form(s) 1099? . . . . . . . | | x | |
| b | If "Yes," did the corporation file or will it file required Form(s) 1099? . . . . . . . . . . . . | | x | |
| 15 | Is the corporation attaching Form 8996 to certify as a Qualified Opportunity Fund? . . . . . . . . | | | x |
| | If "Yes," enter the amount from Form 8996, line 15 . . . . . . . . . . . . ▶ $ | | 0 | |

## Schedule K   Shareholders' Pro Rata Share Items

| | | | | Total amount |
|---|---|---|---|---|
| **Income (Loss)** | 1 | Ordinary business income (loss) (page 1, line 21) . . . . . . . . . . | 1 | -73,054 |
| | 2 | Net rental real estate income (loss) (attach Form 8825) . . . . . . . | 2 | 0 |
| | 3a | Other gross rental income (loss) . . . . . . . . | 3a | |
| | b | Expenses from other rental activities (attach statement) | 3b | 0 |
| | c | Other net rental income (loss). Subtract line 3b from line 3a . . . . | 3c | 0 |
| | 4 | Interest income . . . . . . . . . . . . . . | 4 | |
| | 5 | Dividends: a Ordinary dividends . . . . . . . . | 5a | |
| | | b Qualified dividends . . . . . . . | 5b | |
| | 6 | Royalties . . . . . . . . . . . . . . . | 6 | |
| | 7 | Net short-term capital gain (loss) (attach Schedule D (Form 1120-S)) . | 7 | 0 |
| | 8a | Net long-term capital gain (loss) (attach Schedule D (Form 1120-S)) . | 8a | 0 |
| | b | Collectibles (28%) gain (loss) . . . . . . . . | 8b | |
| | c | Unrecaptured section 1250 gain (attach statement) . . . . | 8c | 0 |
| | 9 | Net section 1231 gain (loss) (attach Form 4797) . . . . . . . . | 9 | 0 |
| | 10 | Other income (loss) (see instructions)     Type ▶ | 10 | 0 |
| **Deductions** | 11 | Section 179 deduction (attach Form 4562) . . . . . . . . . | 11 | 0 |
| | 12a | Charitable contributions . . . . . . . . . . . . . | 12a | 457 |
| | b | Investment interest expense . . . . . . . . . . . . | 12b | |
| | c | Section 59(e)(2) expenditures     Type ▶ | 12c | |
| | d | Other deductions (see instructions)     Type ▶ | 12d | 0 |
| **Credits** | 13a | Low-income housing credit (section 42(j)(5)) . . . . . . . . | 13a | |
| | b | Low-income housing credit (other) . . . . . . . . . . | 13b | 0 |
| | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | 13c | 0 |
| | d | Other rental real estate credits (see instructions)   Type ▶ | 13d | |
| | e | Other rental credits (see instructions)     Type ▶ | 13e | |
| | f | Biofuel producer credit (attach Form 6478) . . . . . . . . | 13f | 0 |
| | g | Other credits (see instructions)     Type ▶ | 13g | 0 |
| **Foreign Transactions** | 14a | Name of country or U.S. possession ▶ | | |
| | b | Gross income from all sources . . . . . . . . . . . | 14b | |
| | c | Gross income sourced at shareholder level . . . . . . . . | 14c | |
| | | Foreign gross income sourced at corporate level | | |
| | d | Reserved for future use . . . . . . . . . . . . . | 14d | |
| | e | Foreign branch category . . . . . . . . . . . . | 14e | |
| | f | Passive category . . . . . . . . . . . . . . | 14f | |
| | g | General category . . . . . . . . . . . . . . | 14g | |
| | h | Other (attach statement) . . . . . . . . . . . . | 14h | |
| | | Deductions allocated and apportioned at shareholder level | | |
| | i | Interest expense . . . . . . . . . . . . . . | 14i | |
| | j | Other . . . . . . . . . . . . . . . . | 14j | |
| | | Deductions allocated and apportioned at corporate level to foreign source income | | |
| | k | Reserved for future use . . . . . . . . . . . . . | 14k | |
| | l | Foreign branch category . . . . . . . . . . . . | 14l | |
| | m | Passive category . . . . . . . . . . . . . . | 14m | |
| | n | General category . . . . . . . . . . . . . . | 14n | |
| | o | Other (attach statement) . . . . . . . . . . . . | 14o | |
| | | Other information | | |
| | p | Total foreign taxes (check one):   ☐ Paid   ☐ Accrued   . . . . ▶ | 14p | |
| | q | Reduction in taxes available for credit (attach statement) . . . . . | 14q | |
| | r | Other foreign tax information (attach statement) | | |

Form **1120-S** (2020)

Form 1120-S (2020)                                                                                     Page **4**

| Schedule K | | Shareholders' Pro Rata Share Items *(continued)* | | Total amount |
|---|---|---|---|---|
| **Alternative Minimum Tax (AMT) Items** | 15a | Post-1986 depreciation adjustment | 15a | |
| | b | Adjusted gain or loss | 15b | 0 |
| | c | Depletion (other than oil and gas) | 15c | |
| | d | Oil, gas, and geothermal properties—gross income | 15d | |
| | e | Oil, gas, and geothermal properties—deductions | 15e | |
| | f | Other AMT items (attach statement) | 15f | 0 |
| **Items Affecting Shareholder Basis** | 16a | Tax-exempt interest income | 16a | |
| | b | Other tax-exempt income | 16b | |
| | c | Nondeductible expenses | 16c | 6,259 |
| | d | Distributions (attach statement if required) (see instructions) | 16d | 204,963 |
| | e | Repayment of loans from shareholders | 16e | |
| **Other Information** | 17a | Investment income | 17a | |
| | b | Investment expenses | 17b | |
| | c | Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d | Other items and amounts (attach statement) | | |
| **Recon-ciliation** | 18 | **Income (loss) reconciliation.** Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and 14p | 18 | -73,511 |

| Schedule L | | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|---|
| | | Assets | (a) | (b) | (c) | (d) |
| 1 | | Cash | | 4,633 | | 1,760 |
| 2a | | Trade notes and accounts receivable | | | | |
| b | | Less allowance for bad debts | ( ) | 0 | ( ) | 0 |
| 3 | | Inventories | | 7,409 | | 13,769 |
| 4 | | U.S. government obligations | | | | |
| 5 | | Tax-exempt securities (see instructions) | | | | |
| 6 | | Other current assets (attach statement) | | 3,178 | | 5,732 |
| 7 | | Loans to shareholders | | 0 | | |
| 8 | | Mortgage and real estate loans | | | | |
| 9 | | Other investments (attach statement) | | 0 | | 0 |
| 10a | | Buildings and other depreciable assets | 235,842 | | 252,008 | |
| b | | Less accumulated depreciation | ( 224,693 ) | 11,149 | ( 242,062 ) | 9,946 |
| 11a | | Depletable assets | | | | |
| b | | Less accumulated depletion | ( ) | 0 | ( ) | 0 |
| 12 | | Land (net of any amortization) | | 441,360 | | 441,360 |
| 13a | | Intangible assets (amortizable only) | 668 | | 0 | |
| b | | Less accumulated amortization | ( 668 ) | 0 | ( 0 ) | 0 |
| 14 | | Other assets (attach statement) | | 5,728 | | 5,728 |
| 15 | | Total assets | | 473,457 | | 478,295 |
| | | **Liabilities and Shareholders' Equity** | | | | |
| 16 | | Accounts payable | | 16,818 | | 16,419 |
| 17 | | Mortgages, notes, bonds payable in less than 1 year | | 174,360 | | 371,835 |
| 18 | | Other current liabilities (attach statement) | | 227,754 | | 254,563 |
| 19 | | Loans from shareholders | | | | |
| 20 | | Mortgages, notes, bonds payable in 1 year or more | | 451,932 | | 517,617 |
| 21 | | Other liabilities (attach statement) | | 0 | | 0 |
| 22 | | Capital stock | | 1,000 | | 1,000 |
| 23 | | Additional paid-in capital | | | | |
| 24 | | Retained earnings | | -398,407 | | -683,139 |
| 25 | | Adjustments to shareholders' equity (attach statement) | | 0 | | 0 |
| 26 | | Less cost of treasury stock | | ( ) | | ( ) |
| 27 | | Total liabilities and shareholders' equity | | 473,457 | | 478,295 |

Form **1120-S** (2020)

Form 1120-S (2020)

Page <strong>5</strong>

### Schedule M-1 — Reconciliation of Income (Loss) per Books With Income (Loss) per Return

**Note:** The corporation may be required to file Schedule M-3. See instructions.

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net income (loss) per books . . . | -75,041 | 5 | Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize) | | a | Tax-exempt interest $ | | 0 |
| | | 0 | | | | |
| 3 | Expenses recorded on books this year not included on Schedule K, lines 1 through 12 and 14p (itemize): | | 6 | Deductions included on Schedule K, lines 1 through 12 and 14p, not charged against book income this year (itemize): | | |
| a | Depreciation $ | | a | Depreciation $ | | 0 |
| b | Travel and entertainment $ | | 7 | Add lines 5 and 6 . . . . . . . | | 0 |
| | | 1,530 | 8 | Income (loss) (Schedule K, line 18). | | |
| 4 | Add lines 1 through 3 . . . . . | -73,511 | | Subtract line 7 from line 4 . . . . | | -73,511 |

### Schedule M-2 — Analysis of Accumulated Adjustments Account, Shareholders' Undistributed Taxable Income Previously Taxed, Accumulated Earnings and Profits, and Other Adjustments Account

(see instructions)

| | | (a) Accumulated adjustments account | (b) Shareholders' undistributed taxable income previously taxed | (c) Accumulated earnings and profits | (d) Other adjustments account |
|---|---|---|---|---|---|
| 1 | Balance at beginning of tax year . . . . | -398,407 | | | 0 |
| 2 | Ordinary income from page 1, line 21 . . . | 0 | | | |
| 3 | Other additions . . . . . . . . . | 1 | | | 0 |
| 4 | Loss from page 1, line 21 . . . . . . . | ( -73,054 ) | | | |
| 5 | Other reductions . . . . . . . . . | ( 6,716 ) | | | ( 0 ) |
| 6 | Combine lines 1 through 5 . . . . . . | -478,176 | 0 | 0 | 0 |
| 7 | Distributions . . . . . . . . . . | 204,963 | | | |
| 8 | Balance at end of tax year. Subtract line 7 from line 6 . . . . . . . . . . . . | -683,139 | 0 | 0 | 0 |

Form <strong>1120-S</strong> (2020)

Form **1125-A**

(Rev. November 2018)

Department of the Treasury
Internal Revenue Service

# Cost of Goods Sold

▶ Attach to Form 1120, 1120-C, 1120-F, 1120S, or 1065.
▶ Go to *www.irs.gov/Form1125A* for the latest information.

OMB No. 1545-0123

| Name | Employer identification number |
|---|---|
| Dr Deleons Woman's Healthcare Clinic PA | 75-2909401 |

| | | | |
|---|---|---|---|
| **1** | Inventory at beginning of year | **1** | 7,409 |
| **2** | Purchases | **2** | 35,009 |
| **3** | Cost of labor | **3** | |
| **4** | Additional section 263A costs (attach schedule) | **4** | 0 |
| **5** | Other costs (attach schedule) | **5** | 0 |
| **6** | **Total.** Add lines 1 through 5 | **6** | 42,418 |
| **7** | Inventory at end of year | **7** | 13,769 |
| **8** | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return. See instructions | **8** | 28,649 |

**9a** Check all methods used for valuing closing inventory:

    (i) ☐ Cost

    (ii) ☐ Lower of cost or market

    (iii) ☐ Other (Specify method used and attach explanation.) ▶

**b** Check if there was a writedown of subnormal goods . . . . . . . . . . . . . . . . ▶ ☐

**c** Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) . . ▶ ☐

**d** If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed under LIFO . . . . . . . . . . . . **9d**

**e** If property is produced or acquired for resale, do the rules of section 263A apply to the entity? See instructions . . ☐ Yes ☐ No

**f** Was there any change in determining quantities, cost, or valuations between opening and closing inventory? if "Yes," attach explanation . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

---

Section references are to the Internal Revenue Code unless otherwise noted.

## What's New

**Small business taxpayers.** For tax years beginning after December 31, 2017, the following apply.

• A small business taxpayer (defined below), may use a method of accounting for inventories that either: (1) treats inventories as nonincidental materials and supplies, or (2) conforms to the taxpayer's financial accounting treatment of inventories.

• A small business taxpayer is not required to capitalize costs under section 263A.

## General Instructions

### Purpose of Form

Use Form 1125-A to calculate and deduct cost of goods sold for certain entities.

### Who Must File

Filers of Form 1120, 1120-C, 1120-F, 1120S, or 1065, must complete and attach Form 1125-A if the applicable entity reports a deduction for cost of goods sold.

### Inventories

Generally, inventories are required at the beginning and end of each tax year if the production, purchase, or sale of

merchandise is an income-producing factor. See Regulations section 1.471-1. If inventories are required, you generally must use an accrual method of accounting for sales and purchases of inventory items.

**Exception for certain taxpayers.** A small business taxpayer (defined below), can adopt or change its accounting method to account for inventories in the same manner as material and supplies that are non-incidental, or conform to its treatment of inventories in an applicable financial statement (as defined in section 451(b)(3)), or if it does not have an applicable financial statement, the method of accounting used in its books and records prepared in accordance with its accounting procedures. See section 471(c)(3).

A small business taxpayer claiming exemption from the requirement to keep inventories is changing its method of accounting for purposes of section 481. For additional guidance on this method of accounting, see Pub. 538, Accounting Periods and Methods. For guidance on changing to this method of accounting, see Form 3115 and the Instructions for Form 3115.

**Small business taxpayer.** A small business taxpayer is a taxpayer that (a) has average annual gross receipts of $25 million or less (indexed for inflation) for the 3 prior tax years, and (b) is not a tax shelter (as defined in section 448(d)(3)). See Pub. 538.

**Uniform capitalization rules.** The uniform capitalization rules of section 263A generally require you to capitalize, or include in inventory, certain costs incurred in connection with the following.

• The production of real property and tangible personal property held in inventory or held for sale in the ordinary course of business.

• Real property or personal property (tangible and intangible) acquired for resale.

• The production of real property and tangible personal property for use in its trade or business or in an activity engaged in for profit.

A small business taxpayer (defined above) is not required to capitalize costs under section 263A(i).

See the discussion on section 263A uniform capitalization rules in the instructions for your tax return before completing Form 1125-A. Also see Regulations sections 1.263A-1 through 1.263A-3. See Regulations section 1.263A-4 for rules for property produced in a farming business.

---

For Paperwork Reduction Act Notice, see instructions.

Cat. No. 55988R

Form **1125-A** (Rev. 11-2018)

Form **1125-E**
(Rev. October 2016)

Department of the Treasury
Internal Revenue Service

**Compensation of Officers**

► Attach to Form 1120, 1120-C, 1120-F, 1120-REIT, 1120-RIC, or 1120S.
► Information about Form 1125-E and its separate instructions is at *www.irs.gov/form1125e.*

OMB No. 1545-0123

| Name | Employer Identification number |
|---|---|
| Dr Deleons Woman's Healthcare Clinic PA | 75-2909401 |

**Note:** Complete Form 1125-E only if total receipts are $500,000 or more. See instructions for definition of total receipts.

| (a) Name of officer | (b) Social security number (see instructions) | (c) Percent of time devoted to business | Percent of stock owned | | (f) Amount of compensation |
|---|---|---|---|---|---|
| | | | (d) Common | (e) Preferred | |
| Luis D Usuga | | 100 % | 100 % | % | 348,000 |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |

| | | | |
|---|---|---|---|
| 2 | Total compensation of officers . . . . . . . . . . . . . . . . . . . . . | **2** | 348,000 |
| 3 | Compensation of officers claimed on Form 1125-A or elsewhere on return . . . . . . . . | **3** | |
| 4 | Subtract line 3 from line 2. Enter the result here and on Form 1120, page 1, line 12 or the appropriate line of your tax return . . . . . . . . . . . . . . . . . | **4** | 348,000 |

For Paperwork Reduction Act Notice, see separate instructions.        Cat. No. 55989C        Form **1125-E** (Rev. 10-2016)

Form **4562**

Department of the Treasury
Internal Revenue Service   (99)

**Depreciation and Amortization**
**(Including Information on Listed Property)**
▶ Attach to your tax return.
▶ Go to *www.irs.gov/Form4562* for instructions and the latest information.

OMB No. 1545-0172

**2020**

Attachment
Sequence No. **179**

| Name(s) shown on return | Business or activity to which this form relates | Identifying number |
|---|---|---|
| Dr Deleons Woman's Healthcare Clinic PA | | 75-2909401 |

**Part I**  **Election To Expense Certain Property Under Section 179**
**Note:** If you have any listed property, complete Part V before you complete Part I.

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | **1** | 1,020,000 |
| 2 | Total cost of section 179 property placed in service (see instructions) | **2** | 0 |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | **3** | 2,550,000 |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | **4** | 0 |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | **5** | 1,020,000 |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 . . . . . . . | **7** | 0 | | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | **8** | 0 |
| 9 | Tentative deduction. Enter the **smaller** of line 5 or line 8 | **9** | 0 |
| 10 | Carryover of disallowed deduction from line 13 of your 2019 Form 4562 | **10** | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5. See instructions | **11** | 274,946 |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 | **12** | 0 |
| 13 | Carryover of disallowed deduction to 2021. Add lines 9 and 10, less line 12 ▶ | **13** | 0 | |

**Note:** Don't use Part II or Part III below for listed property. Instead, use Part V.

**Part II**  **Special Depreciation Allowance and Other Depreciation (Don't** include listed property. See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year. See instructions | **14** | 16,165 |
| 15 | Property subject to section 168(f)(1) election | **15** | 0 |
| 16 | Other depreciation (including ACRS) | **16** | 0 |

**Part III**  **MACRS Depreciation (Don't** include listed property. See instructions.)

**Section A**

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2020 | **17** | 1,203 |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here . . . . . . ▶ ☐ | | |

**Section B—Assets Placed in Service During 2020 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a  3-year property | | 0 | 0 | | | 0 |
| b  5-year property | | 0 | 0 | | | 0 |
| c  7-year property | | 0 | 0 | | | 0 |
| d 10-year property | | 0 | 0 | | | 0 |
| e 15-year property | | 0 | 0 | | | 0 |
| f 20-year property | | 0 | 0 | | | 0 |
| g 25-year property | | 0 | 25 yrs. | | S/L | 0 |
| h Residential rental property | | | 27.5 yrs. | MM | S/L | 0 |
| | | | 27.5 yrs. | MM | S/L | 0 |
| i Nonresidential real property | | 0 | 39 yrs. | MM | S/L | 0 |
| | | 0 | | MM | S/L | 0 |

**Section C—Assets Placed in Service During 2020 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | 0 | | | S/L | 0 |
| b 12-year | | 0 | 12 yrs. | | S/L | 0 |
| c 30-year | | | 30 yrs. | MM | S/L | |
| d 40-year | | 0 | 40 yrs. | MM | S/L | 0 |

**Part IV**  **Summary** (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | **21** | 0 |
| 22 | **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations—see instructions | **22** | 17,368 |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | **23** | | |

For Paperwork Reduction Act Notice, see separate instructions.          Cat. No. 12906N          Form **4562** (2020)

Form 4562 (2020)                                                                                                    Page **2**

| **Part V** | **Listed Property** (Include automobiles, certain other vehicles, certain aircraft, and property used for entertainment, recreation, or amusement.) |

**Note:** For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete **only** 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A—Depreciation and Other Information (Caution:** See the instructions for limits for passenger automobiles.)

24a Do you have evidence to support the business/investment use claimed? ☐ Yes ☐ No   24b If "Yes," is the evidence written? ☐ Yes ☐ No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ Investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use. See instructions . | | | | | 25 | | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | % | | | | S/L – | | |
| | | % | | | | S/L – | | |
| | | % | | | | S/L – | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 . | | | | | 28 | | 0 | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 . . . . . . . . . | | | | | | 29 | | 0 |

**Section B—Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**don't** include commuting miles) . | 0 | | 0 | | 0 | | 0 | | 0 | | 0 | |
| 31 Total commuting miles driven during the year . | 0 | | 0 | | 0 | | 0 | | 0 | | 0 | |
| 32 Total other personal (noncommuting) miles driven . . . . . . . . | 0 | | 0 | | 0 | | 0 | | 0 | | 0 | |
| 33 Total miles driven during the year. Add lines 30 through 32 . . . . . . . | 0 | | 0 | | 0 | | 0 | | 0 | | 0 | |
| 34 Was the vehicle available for personal use during off-duty hours? . . . . . | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? . . . | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C—Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **aren't** more than 5% owners or related persons. See instructions.

| | | Yes | No |
|---|---|---|---|
| 37 | Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| 38 | Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners . . | | |
| 39 | Do you treat all use of vehicles by employees as personal use? . . . . . . . . . . . . . . | | |
| 40 | Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? . . . . . . . . . . . . . . . . | | |
| 41 | Do you meet the requirements concerning qualified automobile demonstration use? See instructions. . . . . | | |

**Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," don't complete Section B for the covered vehicles.

| **Part VI** | **Amortization** |

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2020 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2020 tax year . . . . . . . . . | | | | 43 | 0 |
| 44 **Total.** Add amounts in column (f). See the instructions for where to report . . . . . . . . | | | | 44 | 0 |

Form **4562** (2020)

Dr Deleons Woman's Healthcare Clinic PA    75-2909401

**Statement - 1120S - Deductions - Line 19 - Other deductions - Meals and Entertainment**

| Meals and entertainment | Deductible Amount | Total Deductible Amount |
|---|---|---|
| 50% of Meals & Entertainment | 3,061 | 1,531 |

**Statement - 1120S - Deductions - Line 19 - Other deductions - Other than Meals and Entertainment**

| Other Deductions | Amount |
|---|---|
| Vehicle Expenses | 34,150 |
| Utilities | 8,284 |
| Uniforms, Gowns, and Drapes | 8,351 |
| T&E - Entertainment - Employees | 191 |
| Supplies - Medical | 56,081 |
| Professional Services - Independent Physicians and Sonogram Technicians | 43,121 |
| Professional Services - Accounting, Computer, Electronic Medical Records, Legal, Other | 163,781 |
| Postage and Overnight Delivery | 742 |
| Office Supplies | 11,253 |
| Insurance - Malpractice and Property and Casualty | 31,690 |
| Education | 2,721 |
| Dues & Subscriptions | 12,665 |
| Credit Card Fees | 9,594 |
| Contract Labor | 125 |
| Bank Charges | 11,009 |
| Telecommunications | 19,018 |
| Transportation and Tolls | 296 |

**Statement - 1120S - Schedule L - Line 6 - Other current assets**

| (a) Description | (b) Beginning of the year | (c) End of the year |
|---|---|---|
| Employee Advances | 0 | 400 |
| Prepaid Expenses - Other | 3,178 | 5,332 |

**Statement - 1120S - Schedule L - Line 14 - Other assets**

| (a) Description | (b) Beginning of the year | (c) End of the year |
|---|---|---|
| Security Deposits | 5,728 | 5,728 |

**Statement - 1120S - Schedule L - Line 18 - Other current liabilities**

| (a) Description | (b) Beginning of the year | (c) End of the year |
|---|---|---|
| Payroll Withholding Payable - Simple IRA Match | 13,628 | 9,747 |
| Payroll Taxes Payable - Texas Unemployment | 72 | 40 |
| Payroll Taxes Payable - Federal Unemplyment | 118 | 11 |
| Payroll Taxes Payable - Federal Withholding/Match | 149,463 | 154,982 |
| Credit Card Payable - Compass | 13,874 | 15,196 |
| Cash Overdraft | 13,543 | 34,670 |
| Credit Card Payable - American Express | 25,808 | 27,905 |
| Credit Card Payable - Bank of America | 9,186 | 9,937 |
| Credit Card Payable - Cntigroup | 2,062 | 2,075 |
| Payroll Witholldings Payable - Other | 0 | |

**Statement - 1120S - Schedule M2 - Line 3 - Other additions**

| Type | (a) Accumulated adjustments account | (b) Other adjustments account |
|---|---|---|
| rounding | 1 | |

**Statement - 1120S - Schedule M2 - Line 5 - Other reductions**

| Type | (a) Accumulated adjustments account | (b) Other adjustments account |
|---|---|---|
| Non-deductible Penalties | 304 | |
| Non-deductible Life Insurance | 4,424 | |
| Allocated Charitable Contributions | 457 | |

**Statement - 1120S - Schedule K - Line 12A - Charitable contributions**

| Description | Business Code | Business Name | Amount |
|---|---|---|---|
| Network for Good | A | Network for Good | 52 |
| Camp Kesem | A | Camp Kesem | 300 |
| Memorial for Dredwood | A | Memorial for Dredwood | 105 |

**Statement - 1120S - Schedule K - Line 16C - Nondeductible expenses**

| Description | Amount |
|---|---|
| Non-deductible Owner Life Insurance | 4,424 |
| Non0-deductible Penalties | 304 |

671120

| Final K-1 | Amended K-1 | OMB No. 1545-0123 |

**Schedule K-1**
**(Form 1120-S)**
Department of the Treasury
Internal Revenue Service

**2020**

For calendar year 2020, or tax year

beginning [ ] / [ ] / 2020   ending [ ] / [ ] /

**Shareholder's Share of Income, Deductions, Credits, etc.**    ▶ See separate instructions.

| **Part I** | **Information About the Corporation** |
| --- | --- |

**A** Corporation's employer identification number
7 5 - 2 9 0 9 4 0 1

**B** Corporation's name, address, city, state, and ZIP code
Dr Deleons Woman's Healthcare Clinic PA

PO Box 2849

Rowlett          TX          75030

**C** IRS Center where corporation filed return
e-file

| **Part II** | **Information About the Shareholder** |
| --- | --- |

**D** Shareholder's identifying number

**E** Shareholder's name, address, city, state, and ZIP code
Luis D Usuga

3313 Hayley Court

Richardson          TX          75082

**F** Current year allocation percentage . . .          100 %

**G** Shareholder's number of shares
Beginning of tax year . . . . . . . _____
End of tax year . . . . . . . _____

**H** Loans from shareholder
Beginning of tax year . . . . . . $ _____
End of tax year . . . . . . . $ _____

For IRS Use Only

| **Part III** | **Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items** | |
| --- | --- | --- |
| **1** Ordinary business income (loss) | **13** Credits | |
| -73,054 | | |
| **2** Net rental real estate income (loss) | | |
| 0 | | |
| **3** Other net rental income (loss) | | |
| 0 | | |
| **4** Interest income | | |
| 0 | | |
| **5a** Ordinary dividends | | |
| 0 | | |
| **5b** Qualified dividends | **14** Foreign transactions | |
| 0 | | |
| **6** Royalties | | |
| 0 | | |
| **7** Net short-term capital gain (loss) | | |
| 0 | | |
| **8a** Net long-term capital gain (loss) | | |
| 0 | | |
| **8b** Collectibles (28%) gain (loss) | | |
| 0 | | |
| **8c** Unrecaptured section 1250 gain | | |
| 0 | | |
| **9** Net section 1231 gain (loss) | | |
| 0 | | |
| **10** Other income (loss) | **15** Alternative minimum tax (AMT) items | |
| | | |
| **11** Section 179 deduction | **16** Items affecting shareholder basis | |
| 0 | C          6,259 | |
| **12** Other deductions | | |
| A          457 | | |
| | **17** Other Information | |
| **18** ☐ More than one activity for at-risk purposes* | | |
| **19** ☐ More than one activity for passive activity purposes* | | |
| * See attached statement for additional information. | | |

Form **1120-S**

Department of the Treasury
Internal Revenue Service

## U.S. Income Tax Return for an S Corporation

▶ Do not file this form unless the corporation has filed or
is attaching Form 2553 to elect to be an S corporation.
▶ Go to *www.irs.gov/Form1120S* for instructions and the latest information.

OMB No. 1545-0123

**2021**

For calendar year 2021 or tax year beginning _____, 2021, ending _____, 20 ___

| | |
|---|---|
| **A** S election effective date 01/01/2016 | **D** Employer identification number 75-2909401 |
| **B** Business activity code number (see instructions) 621111 | **E** Date incorporated 01/20/2003 |
| **C** Check if Sch. M-3 attached ☐ | **F** Total assets (see instructions) $ 516,629 |

TYPE OR PRINT

Name: Dr Deleons Woman's Healthcare Clinic PA
Number, street, and room or suite no. If a P.O. box, see instructions.: PO Box 2849
City or town, state or province, country, and ZIP or foreign postal code: Rowlett    TX    75030

**G** Is the corporation electing to be an S corporation beginning with this tax year? See instructions. ☐ Yes ☒ No

**H** Check if: **(1)** ☐ Final return **(2)** ☐ Name change **(3)** ☐ Address change **(4)** ☐ Amended return **(5)** ☐ S election termination

**I** Enter the number of shareholders who were shareholders during any part of the tax year . . . . . ▶ 1

**J** Check if corporation: **(1)** ☐ Aggregated activities for section 465 at-risk purposes **(2)** ☐ Grouped activities for section 469 passive activity purposes

**Caution:** Include **only** trade or business income and expenses on lines 1a through 21. See the instructions for more information.

**Income**

| | | | |
|---|---|---|---|
| 1a | Gross receipts or sales | 1a 1,511,674 | |
| b | Returns and allowances | 1b 3,298 | |
| c | Balance. Subtract line 1b from line 1a | 1c | 1,508,376 |
| 2 | Cost of goods sold (attach Form 1125-A) | 2 | 40,066 |
| 3 | Gross profit. Subtract line 2 from line 1c | 3 | 1,468,310 |
| 4 | Net gain (loss) from Form 4797, line 17 (attach Form 4797) | 4 | 0 |
| 5 | Other income (loss) (see instructions—attach statement) | 5 | 0 |
| 6 | **Total income (loss).** Add lines 3 through 5 ▶ | 6 | 1,468,310 |

**Deductions** (see instructions for limitations)

| | | | |
|---|---|---|---|
| 7 | Compensation of officers (see instructions—attach Form 1125-E) | 7 | 132,000 |
| 8 | Salaries and wages (less employment credits) | 8 | 622,419 |
| 9 | Repairs and maintenance | 9 | 3,736 |
| 10 | Bad debts | 10 | |
| 11 | Rents | 11 | 112,165 |
| 12 | Taxes and licenses | 12 | 85,775 |
| 13 | Interest (see instructions) | 13 | 39,872 |
| 14 | Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 14 | 5,010 |
| 15 | Depletion (**Do not deduct oil and gas depletion.**) | 15 | |
| 16 | Advertising | 16 | 1,312 |
| 17 | Pension, profit-sharing, etc., plans | 17 | |
| 18 | Employee benefit programs | 18 | 65,632 |
| 19 | Other deductions (attach statement) | 19 | 358,093 |
| 20 | **Total deductions.** Add lines 7 through 19 ▶ | 20 | 1,426,014 |
| 21 | **Ordinary business income (loss).** Subtract line 20 from line 6 | 21 | 42,296 |

**Tax and Payments**

| | | | | |
|---|---|---|---|---|
| 22a | Excess net passive income or LIFO recapture tax (see instructions) | 22a 0 | | |
| b | Tax from Schedule D (Form 1120-S) | 22b 0 | | |
| c | Add lines 22a and 22b (see instructions for additional taxes) | | 22c | 0 |
| 23a | 2021 estimated tax payments and 2020 overpayment credited to 2021 | 23a 0 | | |
| b | Tax deposited with Form 7004 | 23b 0 | | |
| c | Credit for federal tax paid on fuels (attach Form 4136) | 23c 0 | | |
| d | Add lines 23a through 23c | | 23d | 0 |
| 24 | Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ ☐ | | 24 | 0 |
| 25 | **Amount owed.** If line 23d is smaller than the total of lines 22c and 24, enter amount owed | | 25 | 0 |
| 26 | **Overpayment.** If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | | 26 | 0 |
| 27 | Enter amount from line 26:  Credited to 2022 estimated tax _____  Refunded ▶ | | 27 | 0 |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer _____  Date 09/15/2022  Title President

May the IRS discuss this return with the preparer shown below? See instructions. ☒ Yes ☐ No

**Paid Preparer Use Only**

| | |
|---|---|
| Print/Type preparer's name: Dave Morgan | Preparer's signature: *Dave Morgan* |
| Date 09/15/2022 / 10/31/2022 | Check ☒ if self-employed |
| PTIN P00959095 | |
| Firm's name ▶ DAVEY L MORGAN CPA | Firm's EIN ▶ |
| Firm's address ▶ 2229 MOSS TRL    Garland    TX    75044 | Phone no. (972)824-7499 |

For Paperwork Reduction Act Notice, see separate instructions.

Cat. No. 11510H

Form **1120-S** (2021)

Form 1120-S (2021)                                                                                                    Page **2**

| **Schedule B** | **Other Information** (see instructions) | | | | | Yes | No |
|---|---|---|---|---|---|---|---|

**1** Check accounting method:  **a** [X] Cash   **b** [ ] Accrual

  **c** [ ] Other (specify) ▶ ...............................................................................................

**2** See the instructions and enter the:

  **a** Business activity ▶ Offices of Physicians and Dentists   **b** Product or service ▶ OB/GYN Medical Practice

**3** At any time during the tax year, was any shareholder of the corporation a disregarded entity, a trust, an estate, or a nominee or similar person? If "Yes," attach Schedule B-1, Information on Certain Shareholders of an S Corporation . . [ ] x

**4** At the end of the tax year, did the corporation:

  **a** Own directly 20% or more, or own, directly or indirectly, 50% or more of the total stock issued and outstanding of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] x

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage of Stock Owned | (v) If Percentage in (iv) Is 100%, Enter the Date (if applicable) a Qualified Subchapter S Subsidiary Election Was Made |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

  **b** Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below  . . . . . . . . . [ ] x

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| Usuga Management LLC | 83-1706185 | LLC | US | 100 |
| Bella Skin and Wellness Center LLC | 84-1876118 | LLC | US | 100 |

**5a** At the end of the tax year, did the corporation have any outstanding shares of restricted stock?  . . . . . . [ ] x

  If "Yes," complete lines (i) and (ii) below.

  **(i)** Total shares of restricted stock  . . . . . . . . . . . . ▶ ...........................................

  **(ii)** Total shares of non-restricted stock  . . . . . . . . . ▶ ...........................................

  **b** At the end of the tax year, did the corporation have any outstanding stock options, warrants, or similar instruments?  . [ ] x

  If "Yes," complete lines (i) and (ii) below.

  **(i)** Total shares of stock outstanding at the end of the tax year  ▶ ....................................

  **(ii)** Total shares of stock outstanding if all instruments were executed ▶ .............................

**6** Has this corporation filed, or is it required to file, **Form 8918**, Material Advisor Disclosure Statement, to provide information on any reportable transaction?  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] x

**7** Check this box if the corporation issued publicly offered debt instruments with original issue discount  . . . . ▶ [ ]

  If checked, the corporation may have to file **Form 8281**, Information Return for Publicly Offered Original Issue Discount Instruments.

**8** If the corporation **(a)** was a C corporation before it elected to be an S corporation **or** the corporation acquired an asset with a basis determined by reference to the basis of the asset (or the basis of any other property) in the hands of a C corporation, **and** **(b)** has net unrealized built-in gain in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years. See instructions . . . . . . . . ▶ $

**9** Did the corporation have an election under section 163(j) for any real property trade or business or any farming business in effect during the tax year? See instructions . . . . . . . . . . . . . . . . . . . . . . . . [ ] x

**10** Does the corporation satisfy one or more of the following? See instructions  . . . . . . . . . . . . [ ] x

  **a** The corporation owns a pass-through entity with current, or prior year carryover, excess business interest expense.

  **b** The corporation's aggregate average annual gross receipts (determined under section 448(c)) for the 3 tax years preceding the current tax year are more than $26 million and the corporation has business interest expense.

  **c** The corporation is a tax shelter and the corporation has business interest expense.

  If "Yes," complete and attach Form 8990.

**11** Does the corporation satisfy **both** of the following conditions?  . . . . . . . . . . . . . . . . [ ] x

  **a** The corporation's total receipts (see instructions) for the tax year were less than $250,000.

  **b** The corporation's total assets at the end of the tax year were less than $250,000.

  If "Yes," the corporation is not required to complete Schedules L and M-1.

Form 1120-S (2021)                                                                                                   Page **3**

| Schedule B | Other Information (see instructions) *(continued)* | | Yes | No |
|---|---|---|---|---|
| 12 | During the tax year, did the corporation have any non-shareholder debt that was canceled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? | | x | |
| | If "Yes," enter the amount of principal reduction . . . . . . . . . . . . . . ▶ $ | 199,900 | | |
| 13 | During the tax year, was a qualified subchapter S subsidiary election terminated or revoked? If "Yes," see instructions . | | | x |
| 14a | Did the corporation make any payments in 2021 that would require it to file Form(s) 1099? . . . | | x | |
| b | If "Yes," did the corporation file or will it file required Form(s) 1099? . . . . . . . . . | | x | |
| 15 | Is the corporation attaching Form 8996 to certify as a Qualified Opportunity Fund? . . . . . . | | | x |
| | If "Yes," enter the amount from Form 8996, line 15 . . . . . . . . . . . . . ▶ $ | 0 | | |

| Schedule K | | Shareholders' Pro Rata Share Items | | Total amount |
|---|---|---|---|---|
| **Income (Loss)** | 1 | Ordinary business income (loss) (page 1, line 21) . . . . . . . . . . | 1 | 42,296 |
| | 2 | Net rental real estate income (loss) (attach Form 8825) . . . . . . . | 2 | 0 |
| | 3a | Other gross rental income (loss) . . . . . . | 3a | 4,000 | |
| | b | Expenses from other rental activities (attach statement) | 3b | 0 | |
| | c | Other net rental income (loss). Subtract line 3b from line 3a . . . | 3c | 4,000 |
| | 4 | Interest income . . . . . . . . . . . . . . . . . . . . | 4 | |
| | 5 | Dividends: a Ordinary dividends . . . . . . . . . . . . . . | 5a | |
| | | b Qualified dividends . . . . . . | 5b | | |
| | 6 | Royalties . . . . . . . . . . . . . . . . . . . . . . | 6 | |
| | 7 | Net short-term capital gain (loss) (attach Schedule D (Form 1120-S)) . . . | 7 | 0 |
| | 8a | Net long-term capital gain (loss) (attach Schedule D (Form 1120-S)) . . . | 8a | 0 |
| | b | Collectibles (28%) gain (loss) . . . . . . | 8b | | |
| | c | Unrecaptured section 1250 gain (attach statement) . . . | 8c | 0 | |
| | 9 | Net section 1231 gain (loss) (attach Form 4797) . . . . . . . . . | 9 | 0 |
| | 10 | Other income (loss) (see instructions) . . . . Type ▶ | 10 | 0 |
| **Deductions** | 11 | Section 179 deduction (attach Form 4562) . . . . . . . . . . . | 11 | 0 |
| | 12a | Charitable contributions . . . . . . . . . . . . . . . . | 12a | 1,458 |
| | b | Investment interest expense . . . . . . . . . . . . . . . | 12b | |
| | c | Section 59(e)(2) expenditures . . . . . . . Type ▶ | 12c | |
| | d | Other deductions (see instructions) . . . . . Type ▶ | 12d | 0 |
| **Credits** | 13a | Low-income housing credit (section 42(j)(5)) . . . . . . . . . | 13a | |
| | b | Low-income housing credit (other) . . . . . . . . . . . . | 13b | 0 |
| | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | 13c | 0 |
| | d | Other rental real estate credits (see instructions) Type ▶ | 13d | |
| | e | Other rental credits (see instructions) . . . Type ▶ | 13e | |
| | f | Biofuel producer credit (attach Form 6478) . . . . . . . . . | 13f | 0 |
| | g | Other credits (see instructions) . . . . . . Type ▶ | 13g | 0 |
| **International Transactions** | 14 | Attach Schedule K-2 (Form 1120-S), Shareholders' Pro Rata Share Items—International, and check this box to indicate you are reporting items of international tax relevance . . . ▶ ☐ | | |
| **Alternative Minimum Tax (AMT) Items** | 15a | Post-1986 depreciation adjustment . . . . . . . . . . . . | 15a | |
| | b | Adjusted gain or loss . . . . . . . . . . . . . . . . | 15b | 0 |
| | c | Depletion (other than oil and gas) . . . . . . . . . . . . | 15c | |
| | d | Oil, gas, and geothermal properties—gross income . . . . . . . | 15d | |
| | e | Oil, gas, and geothermal properties—deductions . . . . . . . | 15e | |
| | f | Other AMT items (attach statement) . . . . . . . . . . . | 15f | 0 |
| **Items Affecting Shareholder Basis** | 16a | Tax-exempt interest income . . . . . . . . . . . . . . | 16a | |
| | b | Other tax-exempt income . . . . . . . . . . . . . . . | 16b | 199,900 |
| | c | Nondeductible expenses . . . . . . . . . . . . . . . | 16c | 8,709 |
| | d | Distributions (attach statement if required) (see instructions) . . . . | 16d | 426,954 |
| | e | Repayment of loans from shareholders . . . . . . . . . . . | 16e | |
| | f | Foreign taxes paid or accrued . . . . . . . . . . . . . | 16f | |

Form **1120-S** (2021)

Form 1120-S (2021)

Page **4**

## Schedule K — Shareholders' Pro Rata Share Items *(continued)*

| | | | Total amount |
|---|---|---|---|
| **Other Information** | 17a | Investment income | 17a | |
| | b | Investment expenses | 17b | |
| | c | Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d | Other items and amounts (attach statement) | | |
| **Reconciliation** | 18 | **Income (loss) reconciliation.** Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and 16f | 18 | 44,838 |

## Schedule L — Balance Sheets per Books

| | Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|---|
| 1 | Cash | | 1,760 | | 42,592 |
| 2a | Trade notes and accounts receivable | | | | |
| b | Less allowance for bad debts | ( ) | 0 | ( ) | 0 |
| 3 | Inventories | | 13,769 | | 12,932 |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities (see instructions) | | | | |
| 6 | Other current assets (attach statement) | | 25,612 | | 4,352 |
| 7 | Loans to shareholders | | | | |
| 8 | Mortgage and real estate loans | | | | |
| 9 | Other investments (attach statement) | | 0 | | 0 |
| 10a | Buildings and other depreciable assets | 252,008 | | 256,737 | |
| b | Less accumulated depreciation | ( 242,062 ) | 9,946 | ( 247,072 ) | 9,665 |
| 11a | Depletable assets | | | | |
| b | Less accumulated depletion | ( ) | 0 | ( ) | 0 |
| 12 | Land (net of any amortization) | | 441,360 | | 441,360 |
| 13a | Intangible assets (amortizable only) | 334 | | 334 | |
| b | Less accumulated amortization | ( 334 ) | 0 | ( 334 ) | 0 |
| 14 | Other assets (attach statement) | | 5,728 | | 5,728 |
| 15 | Total assets | | 498,175 | | 516,629 |
| | **Liabilities and Shareholders' Equity** | | | | |
| 16 | Accounts payable | | 16,419 | | 16,535 |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | 371,835 | | 353,329 |
| 18 | Other current liabilities (attach statement) | | 254,563 | | 230,300 |
| 19 | Loans from shareholders | | | | |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | 517,617 | | 769,648 |
| 21 | Other liabilities (attach statement) | | 0 | | 0 |
| 22 | Capital stock | | 1,000 | | 1,000 |
| 23 | Additional paid-in capital | | | | |
| 24 | Retained earnings | | -663,259 | | -854,183 |
| 25 | Adjustments to shareholders' equity (attach statement) | | 0 | | 0 |
| 26 | Less cost of treasury stock | | ( ) | | ( ) |
| 27 | Total liabilities and shareholders' equity | | 498,175 | | 516,629 |

Form **1120-S** (2021)

Form 1120-S (2021)                                                                                          Page **5**

| **Schedule M-1** | **Reconciliation of Income (Loss) per Books With Income (Loss) per Return** | | | | |
|---|---|---|---|---|---|
| | Note: The corporation may be required to file Schedule M-3. See instructions. | | | | |

| | | | | | |
|---|---|---|---|---|---|
| **1** | Net income (loss) per books . . . . | 42,460 | **5** | Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | |
| **2** | Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize) _____ | | **a** | Tax-exempt interest $ _____ | |
| | _____ | 0 | | | 0 |
| **3** | Expenses recorded on books this year not included on Schedule K, lines 1 through 12 and 16f (itemize): | | **6** | Deductions included on Schedule K, lines 1 through 12 and 16f, not charged against book income this year (itemize): | |
| **a** | Depreciation $ _____ | | **a** | Depreciation $ _____ | |
| | | | | | 0 |
| **b** | Travel and entertainment $ _____ | | **7** | Add lines 5 and 6 . . . . . . . | 0 |
| | | 2,378 | **8** | Income (loss) (Schedule K, line 18). | |
| **4** | Add lines 1 through 3 . . . . . . | 44,838 | | Subtract line 7 from line 4 . . . . | 44,838 |

| **Schedule M-2** | **Analysis of Accumulated Adjustments Account, Shareholders' Undistributed Taxable Income Previously Taxed, Accumulated Earnings and Profits, and Other Adjustments Account** |
|---|---|
| | (see instructions) |

| | | (a) Accumulated adjustments account | (b) Shareholders' undistributed taxable income previously taxed | (c) Accumulated earnings and profits | (d) Other adjustments account |
|---|---|---|---|---|---|
| **1** | Balance at beginning of tax year . . . . | -663,259 | 0 | | 0 |
| **2** | Ordinary income from page 1, line 21 . . . | 42,296 | | | |
| **3** | Other additions . . . . . . . . . | 203,901 | | | 0 |
| **4** | Loss from page 1, line 21 . . . . . . | ( 0 ) | | | |
| **5** | Other reductions . . . . . . . . | ( 10,167 ) | | | ( 0 ) |
| **6** | Combine lines 1 through 5 . . . . . . | -427,229 | 0 | 0 | 0 |
| **7** | Distributions . . . . . . . . . | 426,954 | | | |
| **8** | Balance at end of tax year. Subtract line 7 from line 6 . . . . . . . . . . . | -854,183 | 0 | 0 | 0 |

Form **1120-S** (2021)

| Form **1125-A** | **Cost of Goods Sold** | OMB No. 1545-0123 |
|---|---|---|

(Rev. November 2018)
Department of the Treasury
Internal Revenue Service

▶ Attach to Form 1120, 1120-C, 1120-F, 1120S, or 1065.
▶ Go to *www.irs.gov/Form1125A* for the latest information.

| Name | Employer identification number |
|---|---|
| Dr Deleons Woman's Healthcare Clinic PA | 75-2909401 |

| | | | |
|---|---|---|---:|
| 1 | Inventory at beginning of year | 1 | 13,769 |
| 2 | Purchases | 2 | 39,229 |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs (attach schedule) | 4 | 0 |
| 5 | Other costs (attach schedule) | 5 | 0 |
| 6 | **Total.** Add lines 1 through 5 | 6 | 52,998 |
| 7 | Inventory at end of year | 7 | 12,932 |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return. See instructions | 8 | 40,066 |

9a  Check all methods used for valuing closing inventory:
  (i) ☐ Cost
  (ii) ☐ Lower of cost or market
  (iii) ☐ Other (Specify method used and attach explanation.) ▶ ......................

b  Check if there was a writedown of subnormal goods ............................ ▶ ☐
c  Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ..... ▶ ☐
d  If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed under LIFO .......... | 9d | |
e  If property is produced or acquired for resale, do the rules of section 263A apply to the entity? See instructions .  ☐ Yes  ☐ No
f  Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If "Yes," attach explanation ............................  ☐ Yes  ☐ No

Section references are to the Internal Revenue Code unless otherwise noted.

**What's New**

**Small business taxpayers.** For tax years beginning after December 31, 2017, the following apply.

• A small business taxpayer (defined below), may use a method of accounting for inventories that either: (1) treats inventories as nonincidental materials and supplies, or (2) conforms to the taxpayer's financial accounting treatment of inventories.

• A small business taxpayer is not required to capitalize costs under section 263A.

**General Instructions**

**Purpose of Form**

Use Form 1125-A to calculate and deduct cost of goods sold for certain entities.

**Who Must File**

Filers of Form 1120, 1120-C, 1120-F, 1120S, or 1065, must complete and attach Form 1125-A if the applicable entity reports a deduction for cost of goods sold.

**Inventories**

Generally, inventories are required at the beginning and end of each tax year if the production, purchase, or sale of

merchandise is an income-producing factor. See Regulations section 1.471-1. If inventories are required, you generally must use an accrual method of accounting for sales and purchases of inventory items.
**Exception for certain taxpayers.** A small business taxpayer (defined below), can adopt or change its accounting method to account for inventories in the same manner as material and supplies that are non-incidental, or conform to its treatment of inventories in an applicable financial statement (as defined in section 451(b)(3)), or if it does not have an applicable financial statement, the method of accounting used in its books and records prepared in accordance with its accounting procedures. See section 471(c)(3).

A small business taxpayer claiming exemption from the requirement to keep inventories is changing its method of accounting for purposes of section 481. For additional guidance on this method of accounting, see Pub. 538, Accounting Periods and Methods. For guidance on changing to this method of accounting, see Form 3115 and the Instructions for Form 3115.

**Small business taxpayer.** A small business taxpayer is a taxpayer that (a) has average annual gross receipts of $25 million or less (indexed for inflation) for the 3 prior tax years, and (b) is not a tax shelter (as defined in section 448(d)(3)). See Pub. 538.

**Uniform capitalization rules.** The uniform capitalization rules of section 263A generally require you to capitalize, or include in inventory, certain costs incurred in connection with the following.

• The production of real property and tangible personal property held in inventory or held for sale in the ordinary course of business.

• Real property or personal property (tangible and intangible) acquired for resale.

• The production of real property and tangible personal property for use in its trade or business or in an activity engaged in for profit.

A small business taxpayer (defined above) is not required to capitalize costs under section 263A(i).

See the discussion on section 263A uniform capitalization rules in the instructions for your tax return before completing Form 1125-A. Also see Regulations sections 1.263A-1 through 1.263A-3. See Regulations section 1.263A-4 for rules for property produced in a farming business.

For Paperwork Reduction Act Notice, see instructions.          Cat. No. 55988R          Form **1125-A** (Rev. 11-2018)

Form **1125-E**
(Rev. October 2016)
Department of the Treasury
Internal Revenue Service

# Compensation of Officers

▶ Attach to Form 1120, 1120-C, 1120-F, 1120-REIT, 1120-RIC, or 1120S.
▶ Information about Form 1125-E and its separate instructions is at *www.irs.gov/form1125e.*

OMB No. 1545-0123

| Name | Employer identification number |
|---|---|
| Dr Deleons Woman's Healthcare Clinic PA | 75-2909401 |

**Note:** Complete Form 1125-E only if total receipts are $500,000 or more. See instructions for definition of total receipts.

| (a) Name of officer | (b) Social security number (see instructions) | (c) Percent of time devoted to business | Percent of stock owned | | (f) Amount of compensation |
|---|---|---|---|---|---|
| | | | (d) Common | (e) Preferred | |
| Luis D Usuga | | 100 % | 100 % | % | 132,000 |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |

| | | | | |
|---|---|---|---|---|
| 2 | Total compensation of officers . . . . . . . . . . . . . . . . . . . . . | **2** | | 132,000 |
| 3 | Compensation of officers claimed on Form 1125-A or elsewhere on return . . . . . . . . | **3** | | |
| 4 | Subtract line 3 from line 2. Enter the result here and on Form 1120, page 1, line 12 or the appropriate line of your tax return . . . . . . . . . . . . . . . . . . | **4** | | 132,000 |

**For Paperwork Reduction Act Notice, see separate instructions.**          Cat. No. 55989C          Form **1125-E** (Rev. 10-2016)

| Form **4562** | **Depreciation and Amortization** | OMB No. 1545-0172 |
|---|---|---|
| Department of the Treasury<br>Internal Revenue Service   (99) | **(Including Information on Listed Property)**<br>▶ Attach to your tax return.<br>▶ Go to *www.irs.gov/Form4562* for instructions and the latest information. | **2021**<br>Attachment<br>Sequence No. **179** |

| Name(s) shown on return | Business or activity to which this form relates | Identifying number |
|---|---|---|
| Dr Deleons Woman's Healthcare Clinic PA | | 75-2909401 |

**Part I**  **Election To Expense Certain Property Under Section 179**
**Note:** If you have any listed property, complete Part V before you complete Part I.

| | | |
|---|---|---:|
| 1 | Maximum amount (see instructions) . . . . . . . . . . . . . . . . | **1** | 1,050,000 |
| 2 | Total cost of section 179 property placed in service (see instructions) . . . . . . . | **2** | 0 |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) . . . . | **3** | 2,620,000 |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- . . . . . . | **4** | 0 |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions . . . . . . . . . . . . . . . . . . | **5** | 1,050,000 |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost | |
|---|---|---|---|---|
| | | | | |
| | | | | |

| | | |
|---|---|---:|
| 7 | Listed property. Enter the amount from line 29 . . . . . | **7** | 0 | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 . . . . . | **8** | 0 |
| 9 | Tentative deduction. Enter the **smaller** of line 5 or line 8 . . . . . . . . . | **9** | 0 |
| 10 | Carryover of disallowed deduction from line 13 of your 2020 Form 4562 . . . . . . . | **10** | 0 |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5. See instructions | **11** | 0 |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 . . . . | **12** | 0 |
| 13 | Carryover of disallowed deduction to 2022. Add lines 9 and 10, less line 12  ▶ | **13** | 0 | |

**Note:** Don't use Part II or Part III below for listed property. Instead, use Part V.

**Part II**  **Special Depreciation Allowance and Other Depreciation (Don't** include listed property. See instructions.)

| | | |
|---|---|---:|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year. See instructions . . . . . . . . . . . . . . | **14** | 5,010 |
| 15 | Property subject to section 168(f)(1) election . . . . . . . . . . . . | **15** | 0 |
| 16 | Other depreciation (including ACRS) . . . . . . . . . . . . . . | **16** | 0 |

**Part III**  **MACRS Depreciation (Don't** include listed property. See instructions.)

**Section A**

| | | |
|---|---|---:|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2021 . . . . . | **17** | 0 |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here . . . . . . . . . . . . . . . ▶ ☐ | | |

**Section B—Assets Placed in Service During 2021 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a  3-year property | | 0 | 0 | | | 0 |
| b  5-year property | | 0 | 0 | | | 0 |
| c  7-year property | | 0 | 0 | | | 0 |
| d  10-year property | | 0 | 0 | | | 0 |
| e  15-year property | | 0 | 0 | | | 0 |
| f  20-year property | | | | | | |
| g  25-year property | | 0 | 25 yrs. | | S/L | 0 |
| h  Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| i  Nonresidential real property | | 0 | 39 yrs. | MM | S/L | 0 |
| | | 0 | 0 | MM | S/L | 0 |

**Section C—Assets Placed in Service During 2021 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a  Class life | | 0 | 0 | | S/L | 0 |
| b  12-year | | 0 | 12 yrs. | | S/L | 0 |
| c  30-year | | | 30 yrs. | MM | S/L | |
| d  40-year | | 0 | 40 yrs. | MM | S/L | 0 |

**Part IV**  **Summary**  (See instructions.)

| | | |
|---|---|---:|
| 21 | Listed property. Enter amount from line 28 . . . . . . . . . . . . . . | **21** | 0 |
| 22 | **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations—see instructions . . | **22** | 5,010 |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs . . . . . . . . | **23** | | |

For Paperwork Reduction Act Notice, see separate instructions.     Cat. No. 12906N     Form **4562** (2021)

Form 4562 (2021) Page **2**

**Part V** Listed Property (Include automobiles, certain other vehicles, certain aircraft, and property used for entertainment, recreation, or amusement.)

Note: For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete **only** 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A—Depreciation and Other Information (Caution: See the instructions for limits for passenger automobiles.)**

24a Do you have evidence to support the business/investment use claimed? ☐ Yes ☐ No  24b If "Yes," is the evidence written? ☐ Yes ☐ No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|

25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use. See instructions . | 25 | | |

26 Property used more than 50% in a qualified business use:

| | | % | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | % | | | | | | |
| | | % | | | | | | |

27 Property used 50% or less in a qualified business use:

| | | % | | | S/L – | | | |
|---|---|---|---|---|---|---|---|---|
| | | % | | | S/L – | | | |
| | | % | | | S/L – | | | |

28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 . | 28 | 0 |

29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 . . . . . . . . . . | 29 | 0

**Section B—Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**don't** include commuting miles)  . | 0 | | 0 | | 0 | | 0 | | 0 | | 0 | |
| 31 Total commuting miles driven during the year . | 0 | | 0 | | 0 | | 0 | | 0 | | 0 | |
| 32 Total other personal (noncommuting) miles driven   .  .  .  .  .  .  .  . | 0 | | 0 | | 0 | | 0 | | 0 | | 0 | |
| 33 Total miles driven during the year. Add lines 30 through 32  .  .  .  .  .  .  . | 0 | | 0 | | 0 | | 0 | | 0 | | 0 | |
| 34 Was the vehicle available for personal use during off-duty hours? . | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? . | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C—Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **aren't** more than 5% owners or related persons. See instructions.

| | | Yes | No |
|---|---|---|---|
| 37 | Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees?  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . | | |
| 38 | Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees?  See the instructions for vehicles used by corporate officers, directors, or 1% or more owners  .  . | | |
| 39 | Do you treat all use of vehicles by employees as personal use?  .  .  .  .  .  .  .  .  .  .  . | | |
| 40 | Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received?  .  .  .  .  .  .  .  .  .  .  .  .  . | | |
| 41 | Do you meet the requirements concerning qualified automobile demonstration use? See instructions.  .  .  .  . | | |

Note: If your answer to 37, 38, 39, 40, or 41 is "Yes," don't complete Section B for the covered vehicles.

**Part VI** Amortization

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|

42 Amortization of costs that begins during your 2021 tax year (see instructions):

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |

43 Amortization of costs that began before your 2021 tax year  .  .  .  .  .  .  .  .  .  . | 43 | 0

44 **Total.** Add amounts in column (f). See the instructions for where to report  .  .  .  .  .  .  . | 44 | 0

Form **4562** (2021)

Dr Deleons Woman's Healthcare Clinic PA

75-2909401

**Statement - 1120S - Info Line 1 - Shareholders info**

| Shareholder First Name. | Shareholders Last Name | Shareholders percentage of stock ownership | Shareholder EIN / SSN | Shareholder as a (Individual=Yes) / (Other Entity=No) |
|---|---|---|---|---|
| Luis | Usuga | 100 | | YES |

**Statement - 1120S - Deductions - Line 19 - Other deductions - Meals and Entertainment**

| Meals and entertainment | Deductible Amount | Total Deductible Amount |
|---|---|---|
| 50% of Meals & Entertainment | 4,756 | 2,378 |

**Statement - 1120S - Deductions - Line 19 - Other deductions - Other than Meals and Entertainment**

| Other Deductions | Amount |
|---|---|
| Vehicle Expenses | 26,240 |
| Utilities | 6,964 |
| Uniforms, Gowns, and Drapes | 6,249 |
| T&E - Entertainment - Employees | 1,582 |
| Supplies - Medical | 30,647 |
| Professional Services - Independent Physicians and Sonogram Technicians | 47,533 |
| Professional Services - Accounting, Computer, Electronic Medical Records, Legal, Other | 118,086 |
| Postage and Overnight Delivery | 842 |
| Office Supplies | 12,084 |
| Insurance - Malpractice and Property and Casualty | 31,310 |
| Education | 4,216 |
| Dues & Subscriptions | 10,310 |
| Credit Card Fees | 9,772 |
| Contract Labor | 250 |
| Bank Charges | 17,166 |
| Telecommunications | 26,389 |
| Transportation and Tolls | 2,871 |
| T&E - Lodging | 3,204 |

**Statement - 1120S - Schedule L - Line 6 - Other current assets**

| (a) Description | (b) Beginning of the year | (c) End of the year |
|---|---|---|
| Employee Advances | 400 | 0 |
| Prepaid Expenses - Other | 5,332 | 4,352 |
| Due From Usuga Management | 19,880 | 0 |

**Statement - 1120S - Schedule L - Line 14 - Other assets**

| (a) Description | (b) Beginning of the year | (c) End of the year |
|---|---|---|
| Security Deposits | 5,728 | 5,728 |

**Statement - 1120S - Schedule L - Line 18 - Other current liabilities**

| (a) Description | (b) Beginning of the year | (c) End of the year |
|---|---|---|
| Payroll Withholding Payable - Simple IRA Match | 9,747 | 2,331 |
| Payroll Taxes Payable - Texas Unemployment | 40 | 173 |
| Payroll Taxes Payable - Federal Unemployment | 11 | 22 |
| Payroll Taxes Payable - Federal Withholding/Match | 154,982 | 171,755 |
| Credit Card Payable - PNC | 15,196 | 15,842 |
| Cash Overdraft | 34,670 | 0 |
| Credit Card Payable - American Express | 27,905 | 28,812 |
| Credit Card Payable - Bank of America | 9,937 | 10,029 |
| Credit Card Payable - Citigroup | 2,075 | 1,336 |

**Statement - 1120S - Schedule M2 - Line 3 - Other additions**

| Type | (a) Accumulated adjustments account | (b) Other adjustments account |
|---|---|---|
| Rent Income | 4,000 | |
| Non-taxable PPP Loan Forgiveness | 199,900 | |
| Rounding | 1 | |

**Statement - 1120S - Schedule M2 - Line 5 - Other reductions**

| Type | (a) Accumulated adjustments account | (b) Other adjustments account |
|---|---|---|
| Non-deductible Life Insurance | 6,331 | |
| Allocated Charitable Contributions | 1,458 | |

**Statement - 1120S - Schedule K - Line 12A - Charitable contributions**

| Description | Business Code | Business Name | Amount |
|---|---|---|---|
| Camp Kesem | A | | 153 |
| Latin American Medical Assistance | A | | 1,067 |
| Instarise School Fund | A | | 50 |
| Kilter | A | | 60 |

| Dr Deleons Woman's Healthcare Clinic PA | | | | 75-2909401 |
|---|---|---|---|---|
| Volo Sports | A | | | 128 |

**Statement - 1120S - Schedule K - Line 16C - Nondeductible expenses**

| Description | Amount |
|---|---|
| Non-deductible Owner Life Insurance | 6,331 |

**Statement - 1120S - Schedule K - Line 17D - Other items and amounts**

| Description | Amount |
|---|---|
| V - Section 199A information | 46,296 |
| W - Section 199A W-2 Wages | 754,419 |
| X - Section 199A Unadjusted Basis of qualified property | 228,049 |

**Schedule K-1 (1120-S) - Qualified Business Income Deduction**

| SSTB | Qualified Business Income/(Loss) | Qualified Business Income/(Loss) | Section 179 | W-2 Wages | Unadjusted Basis Immediately After Acquisition | Qualified REIT Dividends | Qualified PTP Income/(Loss) |
|---|---|---|---|---|---|---|---|
| NO | 46,296 | | | 754,419 | 228,049 | 0 | 0 |

671121

| ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0123 |

**Schedule K-1**
**(Form 1120-S)**
Department of the Treasury
Internal Revenue Service

**2021**

For calendar year 2021, or tax year

beginning ____ / ____ / 2021    ending ____ / ____ / ____

**Shareholder's Share of Income, Deductions,**
**Credits, etc.**    ► **See separate instructions.**

## Part I    Information About the Corporation

**A** Corporation's employer identification number
7 5 - 2 9 0 9 4 0 1

**B** Corporation's name, address, city, state, and ZIP code
Dr Deleons Woman's Healthcare Clinic PA

PO Box 2849

Rowlett            TX            75030

**C** IRS Center where corporation filed return
e-file

**D** Corporation's total number of shares
Beginning of tax year . . . . . 1000
End of tax year . . . . . . . 1000

## Part II    Information About the Shareholder

**E** Shareholder's identifying number

**F** Shareholder's name, address, city, state, and ZIP code
Luis D Usuga

3313 Hayley Court

Richardson            TX            75082

**G** Current year allocation percentage . . . . 100 %

**H** Shareholder's number of shares
Beginning of tax year . . . . . 1000
End of tax year . . . . . . . 1000

**I** Loans from shareholder
Beginning of tax year . . . . . $ _____
End of tax year . . . . . . . $ _____

For IRS Use Only

## Part III    Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | | |
|---|---|---|---|---|
| **1** | Ordinary business income (loss) 42,296 | **13** | Credits | |
| **2** | Net rental real estate income (loss) 0 | | | |
| **3** | Other net rental income (loss) 4,000 | | | |
| **4** | Interest income 0 | | | |
| **5a** | Ordinary dividends 0 | | | |
| **5b** | Qualified dividends 0 | **14** | Schedule K-3 is attached if checked . . . . ► ☐ | |
| **6** | Royalties 0 | **15** | Alternative minimum tax (AMT) items | |
| **7** | Net short-term capital gain (loss) 0 | | | |
| **8a** | Net long-term capital gain (loss) 0 | | | |
| **8b** | Collectibles (28%) gain (loss) 0 | | | |
| **8c** | Unrecaptured section 1250 gain 0 | | | |
| **9** | Net section 1231 gain (loss) 0 | **16** | Items affecting shareholder basis | |
| | | B | 199,900 | |
| **10** | Other income (loss) | C | 8,709 | |
| | | D | 426,954 | |
| | | **17** | Other information | |
| **11** | Section 179 deduction 0 | V | See Statement QBI Income 46,296 | |
| **12** | Other deductions | V | See Statement QBI W-2 Wages 754,419 | |
| A | 1,458 | V | See Statement Unadjusted Basis 228,049 | |
| **18** | ☐ More than one activity for at-risk purposes* | | | |
| **19** | ☐ More than one activity for passive activity purposes* | | | |

* See attached statement for additional information.